FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Fax: (212) 425-1900
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x          **06 CIV 12991 (HB)**
EXMAR SHIPPING N.V.,

            Plaintiff,

    -against-

POLAR SHIPPING S.A. and
POLAR SHIPPING CO., LTD.,

            Defendants.
-------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE OR REDUCE PLAINTIFF'S RULE B ATTACHMENT


            FREEHILL HOGAN & MAHAR, LLP
            Attorneys for Plaintiff Exmar Shipping N.V.
            80 Pine Street, 24th floor
            New York, New York 10005
            (212) 425-1900

James L. Ross
Manuel A. Molina
 Of Counsel

NYDOCS1/300891.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................... ii

BACKGROUND FACTS ..................................................................... 1

ARGUMENT........................................................................................ 3

## POINT I

EXMAR HAS MET ITS BURDEN TO SHOW WHY THE ATTACHMENT
SHOULD BE MAINTAINED.......................................... 3

## POINT II

EXMAR'S CLAIMS UNDER THE MOAS AND THE CHARTER PARTIES
ARE BREACH OF CONTRACT CLAIMS, NOT "CONTINGENT"
INDEMNITY CLAIMS................................................................... 4

## POINT III

EVEN IF EXMAR'S CLAIMS WERE TO BE COUCHED AS "INDEMNITY
CLAIMS" THEY ARE RIPE UNDER ENGLISH LAW AND SUPPORT THE
CHALLENGED ATTACHMENTS.................................................. 8

## POINT IV

IN ITS EXERCISE OF ITS DISCRETION, THIS COURT SHOULD
MAINTAIN THE ATTACHMENTS................................................ 10

CONCLUSION .......................................................................... 17

# TABLE OF AUTHORITIES

## Cases

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,
460 F.3d 434 (2d Cir. 2006)...................................................................................... 3

Bottiglieri di Navigazione, Spa v. Tradekube LLC, ,
472 F. Supp. 2d 588 (S.D.N.Y. 2007)................................................................... 9, 14

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.,
No. 05-7173, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. Oct. 3, 2005)............................ 12, 13, 14

Dolco Inves. Ltd. v. Moonriver Dev. Ltd.,
 486 F. Supp. 2d 261 ( S.D.N.Y. 2007)..................................................................... 3

Eitzen Sealift A.S. v. Cementos Andinos Dominicanos, S.A.,
05-4550, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9, 2005) ........................................ 13, 14

Ellerman Lines, Ltd. v. Atlantic and Gulf Stevedores, Inc.,
339 F.2d 673 (3d Cir. 1964), cert. denied, 382 U.S. 812 (1965) .................................. 14

Greenwich Marine, Inc. v. S.S. Alexandra,
339 F.2d 901 (2d Cir. 1965)..................................................................................... 11

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,
 485 F. Supp. 2d 399 (S.D.N.Y. 2007)..................................................................... 15

Ronda Ship Management Inc. v. Doha Asian Games Organising Committee,
511 F. Supp. 2d 399 (S.D.N.Y. 2007)....................................................................... 4

Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,
478 F. Supp. 2d 532 (S.D.N.Y. 2007)................................................................... 5, 16

Staronset Shipping Ltd. v. North Star Navigation Inc.,
659 F. Supp. 189 (S.D.N.Y. 1987) .............................................................. 11, 12, 14

T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.,
 415 F. Supp. 2d 310 (S.D.N.Y. 2006)..................................................................... 5

Telfare Shipping Corps v. Inersea Carriers, S.A.,
 (the "CAROLINE P") [1984] 2 Lloyd's Rep. 466 (2.B) Com. Ct.) ............................................ 9

Tide Line, Inc. v. Eastrade Commodities, Inc.,
No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15, 2006)...................................... 3, 4

Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.,
No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) ......................................... 3

Plaintiff, EXMAR SHIPPING N.V. ("EXMAR"), by and through its counsel, Freehill Hogan & Mahar, LLP, hereby submits this Memorandum of Law in opposition to the Motion of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD (collectively "POLAR") to vacate or reduce the attachment.

## BACKGROUND FACTS

The relevant facts for the adjudication of POLAR's motion are relatively straightforward. POLAR and EXMAR entered into three Memoranda of Agreement ("MOAs") for the sale-purchase of the existing vessels M/V POLAR BELGICA, M/V DISCOVERY and M/V POLAR ENDURANCE. [1] (Affidavit of James L. Ross, dated March 18, 2008 ("Ross Aff."), Ex. E, ¶¶7 and 18). EXMAR, in turn, entered into three MOAs with a third party SIGAS (Singapore) Pte. Ltd. ("SIGAS") for the sale-purchase of those three vessels. (Ross Aff., Ex. E, ¶¶8 and 18). The transactions were back-to-back and contained similar terms. (Ross Aff., Ex. E, ¶¶9 and 19). In addition, POLAR, EXMAR and SIGAS' affiliate Eitzen Gas, AS ("Eitzen") executed Tripartite Termination Agreements ("TTA"). For the POLAR BELGICA and the POLAR DISCOVERY sale, Eitzen agreed to pay EXMAR the sums of $3,990,00 and $3,820,1000 respectively under the TTAs. (Ross Aff., Ex. E, ¶¶11and 21).

Pursuant to the terms of MOAs, the vessels were required to be delivered without conditions or recommendations from Class Society Surveyors. (Ross Aff., Ex. E, ¶10 and 20). However, upon delivery of the vessels POLAR BELGICA and POLAR DISCOVERY, Class Surveyors found several deficiencies such that the vessels had conditions of class upon delivery in express violation of the parties' agreements. (Ross Aff., Ex. E ¶¶12-15 and 22-24). As a protective countermeasure, Eitzen/SIGAS unilaterally deducted the sum of $275,000 and claimed a deduction in the sum of $475,408.45, respectively from the POLAR BELGICA and

---

[1] The M/V POLAR ENDURANCE sale went forward without any claimed breach of its MOA.

NYDOCS1/300784.1

the POLAR DISCOVERY TTAs. (Ross Aff., Ex. E ¶¶12-15 and 22-24). Eitzen/SIGAS commenced London arbitration proceedings against EXMAR. EXMAR, based on the breaches by POLAR of the POLAR-EXMAR MOAS, commenced London arbitration proceedings against POLAR. See Declaration of Stuart Dench, dated March 17, 2008 ("Dench Decl.").

In addition, POLAR and EXMAR had executed three time charter parties for the use and operation of the vessels POLAR BELGICA, POLAR DISCOVERY and POLAR ENDURANCE. Under each of these charter parties, POLAR expressly warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots." (Ross Aff., Ex. E, ¶34). EXMAR and Eitzen/SIGAS also entered into three back-to-back charter party contracts for the use and operation of those vessels, which contracts contained similar speed warranties. (Ross Aff., Ex. E, ¶35). The vessels commenced performance under the various charter parties. Ultimately, Eitzen/SIGAS claimed breaches of the express warranties contained in the EXMAR-Eitzen/SIGAS charter parties and brought speed claims against EXMAR, to wit: (a) a claim for $69,900.00 under the POLAR BELGICA charter; (b) a claim for $96,300 under the POLAR DISCOVERY charter; and (c) a claim for $120,650 under the POLAR ENDURANCE. (Ross Aff., Ex. E ¶38). Eitzen/SIGAS brought these claims in London arbitration. EXMAR on the basis of separate charter party contracts with POLAR, also brought speed claims against POLAR for POLAR's breaches of the speed warranties contained in those contracts, to wit, (a) a claim for $615,468.44 under the POLAR BELGICA charter; (b) a claim for $96,300 under the POLAR DISCOVERY charter, which claim is expect to increase once EXMAR's expert concludes his analysis of the log books; and (c) a claim for $327,880.64 under the POLAR ENDURANCE.

(Ross Aff., Ex. F, ¶39).[2]  EXMAR has brought these speed claims against POLAR in a separate London arbitration.

## ARGUMENT

### POINT I

### EXMAR HAS MET ITS BURDEN TO SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED

To sustain its burden and defeat a motion to vacate, Plaintiff only needs to demonstrate that: (1) the cause of action arises within the Court's admiralty jurisdiction; (2) the Defendant cannot be found within the District; and (3) the Defendant has property within this District. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006).

Although the *Aqua Stoli* Court did not exactly state what a Plaintiff must show to meet this burden, Courts of this District have adopted a *prima facie* standard. *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-1979, 2006 U.S. Dist. LEXIS 95870 (S.D.NY. Aug. 15, 2006); *Transportes Navieros y Terrestres, S.A. de C.V. v. Fairmount Heavy Transport N.V.*, No. 07-3076, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007); *Dolco Inves. Ltd. v. Moonriver Dev. Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007).  Under this *prima facie* standard, a Rule E(4)(f) hearing is not intended to, and should not, be a fact-intensive inquiry into the underlying merits of Plaintiff's claim (especially where the dispute is subject to arbitration).  All that the Plaintiff needs to defeat a Rule E(4)(f) Motion to vacate is a proper Verified Complaint. *Tide Line*, 2006 U.S. Dist. LEXIS 95870, *15-16; *Transportes Navieros*, 2007 U.S. Dist. LEXIS 50260, *11.

As Chief Judge Wood has stated:

---

[2] Plaintiff submitted to the Court a March 4, 2008 fax attaching a Second Amended Verified Complaint (Ross Aff., Exhibit F).  Plaintiff seeks leave of Court to allow its filing.

> Thus to show that it has a *prima facie* claim, a Plaintiff need not provide any supporting evidence; its Complaint should suffice. Furthermore *Aqua Stoli* implies that a Plaintiff is likewise not required to provide evidence showing that it has a claim against Defendant to carry its burden under Supplemental Rule E(4)(f).

2006 U.S. Dist. LEXIS 95870, *15-16 (emphasis supplied); *Ronda Ship Management Inc. v. Doha Asian Games Organising Committee*, 511 F. Supp. 2d 399, 403-04 (S.D.N.Y. 2007) (under the prima facie pleading standard, "the Court ***looks only to the Complaint*** to determine whether the Plaintiff has alleged a valid admiralty claim against the Defendant").

EXMAR respectfully submits that a review of its Amended Verified Complaint demonstrates that it has satisfied all the technical requirements mandated by Rule B. Accordingly, the attachment is valid and should be maintained.

## POINT II

### EXMAR'S CLAIMS UNDER THE MOAS AND THE CHARTER PARTIES ARE DIRECT BREACH OF CONTRACT CLAIMS, NOT "CONTINGENT INDEMNITY" CLAIMS

POLAR's sole challenge to the propriety of the attachment relates to the first *Aqua Stoli* requirement, *i.e.* EXMAR has not made out a *prima facie* admiralty claim. In making this argument, POLAR deliberately mischaracterizes EXMAR's breach of contract claims as "contingent indemnity" claims. This argument is without merit and should be rejected by the Court. Indeed, the frivolity of POLAR's Motion is demonstrated by the fact that this Rule B action has been pending before the Court for close to a year and a half; yet, POLAR, like Saul struck by divine intervention down the road to Damascus, has suddenly seen the light to convert run of the mill contract claims into contingent indemnity claims.

There is no dispute between the parties that the legal precedents in this District establish that the question of whether a party has asserted a valid admiralty claim within the ambit of Rule B must be decided under the law of the of the maritime contract relied upon by the party, which

in this case is English law. *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp.

2d 532 (S.D.N.Y. 2007); *T&O Shipping Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d

310 (S.D.N.Y. 2006). Judge Haight has clearly stated this rule as follows:

> The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of
> attachment turns upon the applicable substantive law, <u>in this case the law of the
> contract</u>. (Emphasis Added).

*Sonito*, 478 F. Supp. 2d at 543.

EXMAR has submitted in London arbitration proceedings the following **breach of
contract** claims against POLAR: (a) claims for breach of the POLAR BELGICA MOA
($362,947.31) and the POLAR DISCOVERY MOA ($475,408.45) on the basis that POLAR, in
violation of those contracts with EXMAR, failed to deliver the vessels without conditions or
recommendations from Class Society Surveyors; (b) claims for breach of the POLAR
BELGICA, POLAR DISCOVERY and POLAR ENDURANCE charter parties, totaling
$1,039,649, on the basis that POLAR breached the speed warranties contained in those charter
party contracts with EXMAR; and (c) claim for damage to cargo in the sum of $179,528.45
concerning the POLAR ENDURANCE charter party. (Ross Aff., Ex. G, ¶¶15, 25, 31, and 39).
However, this cargo claim is irrelevant to POLAR's motion, as the funds that were originally
attached  in relation to this claim were released when POLAR provided a STEAMSHIP P&I
Letter of Undertaking as substitute security. (Ross Aff., ¶¶5-9, Ex. G).

## MOA CLAIMS

As demonstrated by English solicitor Stuart Dench, all of the EXMAR claims now
pending against POLAR in London arbitration are direct breach of contract claims, **not**
contingent indemnity claims as POLAR disingenuously attempts to mischaracterize them.
(Dench Decl., ¶¶7, 9-15).  With respect to the MOA claims, Mr. Dench attests that pursuant to

the EXMAR-POLAR MOAs, POLAR contractually undertook to deliver to EXMAR the POLAR BELGICA and the POLAR DISCOVERY free from any deficiencies. (Dench Decl., ¶7). Thus, to the extent that deficiencies were found upon the delivery of those vessels, such deficiencies gave rise to a direct breach of contract claim by EXMAR against POLAR pursuant to the terms of the MOAs between EXMAR and POLAR. (Dench Decl., ¶7). When correctly viewed through the prism of English law, EXMAR MOA claims are classic breach of contract claims. And while Eitzen/SIGAS may have brought similar claims against EXMAR pursuant to the Eitzen/SIGAS-EXMAR MOAs, those claims are subject to different arbitration proceedings and, crucially, "EXMAR could directly sustain its claim against POLAR in their arbitration proceeding, regardless of the outcome of the arbitration between EXMAR and Eitzen/SIGAS." (Dench Decl., ¶7).

## SPEED CLAIMS

Similarly, Mr. Dench attests that EXMAR's speed claims against POLAR are breach of contract claims, **not** contingent indemnity claims. Pursuant to the clear terms of the three charter parties entered into by EXMAR and POLAR, POLAR provided a "speed warranty" to EXMAR. The warranty provided that the three vessels under charter would achieve a "guaranteed speed" of "about 15 knots." (Dench Decl., ¶9). Thus, to the extent that the POLAR vessels failed to meet this "guaranteed speed," POLAR violated the express contractual warranty contained in the three EXMAR-POLAR charter parties. (Dench Decl., ¶9). While Eitzen/SIGAS has presented their own breach of warranty claims against EXMAR based upon a similar speed warranty contained in the charter party contracts between Eitzen/SIGAS and EXMAR, this fact does not convert the EXMAR claims  against POLAR into "contingent indemnity" claims. First, the Eitzen/SIGAS speed claims are subject to different arbitration proceedings. Second, EXMAR's

speed claim damages against POLAR are completely separate, independent and for greater amounts because they involve different charter party hire rates and longer charter party durations than those involved in the Eitzen/SIGAS-EXMAR charter parties. (Dench Decl., ¶9). Indeed, given that different contracts are in play on the various London arbitrations, "it is quite conceivable that there could be inconsistent results and EXMAR can sustain its claim against POLAR regardless of the outcome of the arbitration between EXMAR and Eitzen/SIGAS." (Dench Decl., ¶9).

As Mr. Dench points out, POLAR attempts to mislead the Court by citing English authorities that discuss principles of "contracts of indemnity" or "implied indemnity." These principles have no relevance. The claims by EXMAR against POLAR are direct breach of contract claims. (Dench Decl., ¶¶7, 9, 10). In fact, POLAR does not, and cannot, argue that EXMAR's claims are based on a contract of indemnity. There is no indemnity language contained in the contracts between EXMAR and POLAR or between Eitzen/SIGAS and EXMAR. Further, as "[n]one of the MOAS or charter parties contain indemnity language, they are certainly not contracts of indemnity." (Dench Decl., ¶12).

Similarly, in attempt to recast the nature of EXMAR's claims as "implied indemnity" claims POLAR speciously argues that EXMAR's claims will not accrue until EXMAR's liability against Eitzen/SIGAS is determined. As discussed above, this position is patently false because "whether or not Eitzen/SIGAS succeed in their arbitrations against EXMAR does not prevent EXMAR from successfully pursuing breach of contract causes of action directly against POLAR under their [separate] contracts." (Dench Decl., ¶¶7, 9, 18, 19).

As a plain reading of the Amended Complaint demonstrates, EXMAR is seeking damages for beach of contract by POLAR pursuant to the terms of each of the maritime contracts executed

between EXMAR and POLAR. EXMAR's claims against POLAR for breach of the MOAs and charter parties at issue accrued at the time the alleged breaches occurred, and hence prior to the commencement of the instant Rule B attachment action. POLAR's argument that EXMAR's claims are "contingent indemnity" claims is meritlesss and should be rejected by the Court. As such, EXMAR respectfully submits that this Court should deny POLAR's Motion on this ground alone.

## POINT III

### EVEN IF EXMAR'S CLAIMS WERE TO BE COUCHED AS "INDEMNITY CLAIMS," THEY ARE RIPE UNDER ENGLISH LAW AND SUPPORT THE CHALLENGED ATTACHMENTS

If the Court agrees that the EXMAR claims against POLAR are direct breach of contract claims, the Motion to vacate the attachment should be denied and there is no need to even consider the alleged arguments of POLAR that the claims are unripe. However, even if EXMAR's breach of contract claims could be recast as "indemnity claims," which is denied, under English law EXMAR's claims for an indemnity based on a breach of contract are ripe because they accrue at the time of the breach., even though a final resolution of the underlying claims brought by Eitzen/SIGAS against EXMAR has not yet been quantified. (Dench Decl., ¶16). As Mr. Dench observes, "[t]his reflects the principle that a cause of action in contract accrues at the date of breach rather than at the date of loss." (Dench Decl., ¶16). In fact, precisely because EXMAR's claims against POLAR are based on the separate MOAs and charter parties executed by and between EXMAR and POLAR, the extent of POLAR's liability to EXMAR "will stand or fall on the merits of the EXMAR-POLAR contracts at issue." (Dench Decl., ¶¶16, 19). As a result, under English law, all of EXMAR's claims are ripe, and EXMAR is now entitled to obtain security from POLAR for its claims. (Dench Decl., ¶15).

Mr. Dench also points out that *Telfare Shipping Corps v. Inersea Carriers, S.A.* (the "CAROLINE P") [1984] 2 Lloyd's Rep. 466 (2.B) Com. Ct.)), does not support POLAR's position.   (Dench Decl., ¶16).  Mr. Dench attests that the CAROLINE P case stands for the proposition that a cause of action for an "indemnity" will accrue at different times depending upon the precise nature of the indemnity.   Thus, even if an indemnitee's actual liability to a third party has not yet been determined, it is nevertheless entitled to obtain security from its indemnitor where the "indemnity" is based on a breach of contract claim, as the cause of action has accrued at the time of the breach of the contract:

> A review of the CAROLINE P judgment makes very clear that where an "indemnity" claim is pursued as a breach of contract claim, that cause of action arises at the moment of the breach. On page 474 of the judgment, Neill J. states:
>
> > From a consideration of these cases and other authorities to which my attention was directed it seems to me that it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C).
> >
> > The first way is by an action for damages for breach of contract (or warranty).  In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of contract between (A) and (C) or of a warranty given by (C) to (A).  The damages will be assessed in accordance with *Hadley v. Baxendale* principles.  ***The cause of action will date from the date of breach.....***

(Dench Decl., ¶16; emphasis supplied). [3]  Importantly, as Mr. Dench observes, the *CAROLINE P* case involved an implied indemnity claim.  This is not the type of claim being brought by EXMAR against POLAR.

---

[3] The *CAROLINE P* judgment recognizes three types of "indemnity claims" under English law: (a) "first way" indemnity claim (the applicable one here even if the Court were to agree with POLAR that EXMAR has asserted indemnity claims), which is an indemnity claim being pursued on the basis of a breach of contract claim; (b) "second way" indemnity claim which is an indemnity claim based on the existence of a contract of indemnity by the parties (no such contract of indemnity exists here); and (c) "third way" indemnity claim which is an implied indemnity claim; this type of claim is not involved here either. *Bottiglieri di Navigazione Spa v. Tradeline LLC*, 472 F. Supp. 2d 588, 590 (S.D.N.Y.  2007).

Here, even if EXMAR's claims could be recast as "indemnity" claims they are "first way" indemnity claims because they are based upon POLAR's breaches of contracts and warranties contained in the MOAs and charter parties between EXMAR and POLAR. Thus, under the *CAROLINE P* analysis, "the cause of action" for these indemnities "will date from the date of breach" of the EXMAR-POLAR contracts, even though the measure of the underlying damages claimed by Eitzen/SIGAS against EXMAR has not been determined in the arbitration proceedings. (Dench Decl., ¶16). As explained by Mr. Dench, under the reasoning of the *CAROLINE P* judgment:

> EXMAR may be liable to Eitzen/SIGAS under the MOAS and the charter parties executed between them and that liability may arise from POLAR's breach of the MOAS and charter parties executed with EXMAR. EXMAR by virtue of these breaches is entitled to damages from POLAR and the measure of the loss and damage which EXMAR can recover from POLAR will be based in part upon EXMAR's liability to Eitzen/SIGAS. However, under English law, EXMAR's cause of action under the EXMAR/POLAR MOAS and charter parties will accrue upon the date of the breach of those contracts and will ***not*** depend upon a final resolution of the underlying claims brought by Eitzen/SIGAS against EXMAR.

(Dench Decl., ¶16).

Crucially, the Declaration of Mr. Nicholas Burgess, POLAR's English solicitor conspicuously omits a copy of the CAROLINE P decision and fails to discuss the CAROLINE P analysis of "first way" indemnity claims that are being pursued on the basis of a breach of contract. The EXMAR's claims, even if recast as indemnity claims, would clearly be considered "first way" indemnity claims by an English court. (Dench Decl., ¶16). This glaring omission concerning a dispositive point of English law evinces the frivolity of POLAR's legal argument under English law.

Thus, for purposes of Rule B, EXMAR's maritime claims are ripe and the attachment of POLAR's funds was proper and should be maintained.

## POINT IV

### IN ITS EXERCISE OF ITS DISCRETION, THIS COURT SHOULD MAINTAIN THE ATTACHMENTS

As POLAR own cited authorities demonstrate, it is well-settled that the determination of whether a claim is premature is within the discretion of this Court. *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge"); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 191 (S.D.N.Y. 1987) (relying upon *Greenwich Marine* to hold that the prematurity of a claim is a question "committed to our discretion"); *T&O Shipping, Ltd. v. Lydia Mar Shipping Co., S.A.*, 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) ("A court has discretion to allow or disallow a Rule B attachment to secure contingent liabilities").

The dispositive issue in a Court's analysis, as a review of the pertinent jurisprudence discloses, is whether the indemnity claim is too remote or speculative to provide a Plaintiff with a reasonable belief that it will ultimately face liability. EXMAR respectfully submits that even if the Court were to find EXMAR's claims premature, it should nevertheless exercise its discretion and maintain the attachment, as the equities in this case tip decisively in EXMAR's favor. If the attachments are vacated, EXMAR would be irreparably harmed because the attached funds are the only existing assets of POLAR. (Ross Aff., ¶2).

Here, despite POLAR's protestations to the contrary: (a) EXMAR is pursuing its claims against POLAR in their own arbitration proceedings (Dench Decl., ¶¶3-6); (b) Eitzen/SIGAS is pursuing its claims against EXMAR in their own arbitration proceedings (Dench Decl., ¶¶3-6) ; (c) all of the parties involved in the separate London arbitrations "have agreed to attend a formal Mediation hearring on April 22, 2008, in an effort to amicably resolve all disputes" (Dench

Decl., ¶6); (d) it is undisputed that Eitzen/SIGAS has already taken self-help measures to secure some of its claims, such as for example the deduction of $275,000 concerning the POLAR BELGICA and has claimed a deduction in the sum of $475,408 concerning the POLAR DISCOVERY; and (e) EXMAR has already incurred the sum of £12,000 in defending the Eitzen/SIGAS claims (Dench Decl., ¶6). In light of the facts and circumstances of this case, Eitzen/SIGAS claims against EXMAR are neither remote nor speculative. The argument that EXMAR does not have valid admiralty claims against POLAR because its claims are premature is therefore belied by the facts. Accordingly, EXMAR respectfully requests that this Court, in exercising its discretion, should deny POLAR's Motion to vacate or reduce the attachment.

The undisputed facts demonstrate that EXMAR's claims are not remote or speculative, but real and concrete. Even under less favorable factual situations, Judges of this Court have exercised their discretion and allowed the challenged attachment to stand. For example, in *Staronset, supra,* a stevedore brought a claim in Federal Court against the shipowner and arrested the vessel. The owner posted security to obtain the vessel's release. The shipowner subsequently applied for a Rule B attachment against charterer and successfully restrained charterer's assets. Charterer moved to vacate on the same ground advanced here by POLAR that owner's claim was premature. In denying charterer's Motion, Judge Knapp stated:

> The charterer also argues that the attachment should be vacated on the ground that the instant action is premature, since no cause of action will arise until such time, if ever, as the ship owner incurs liability. . . . In the exercise of our discretion, *we believe that the ship owner's concerns are reasonable and that he is entitled to the security which he seeks*.

659 F. Supp. at 190 (emphasis supplied).

Similarly, in *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, No. 05-7173, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. Oct. 3, 2005), vessel Owners had commenced

arbitration against Plaintiff Charterer and Plaintiff, in turn, commenced arbitration against Defendant Sub-Charterer. The **only act** undertaken by vessel Owners against Plaintiff was the provision of documentary evidence in support of its claim. On the existence of those facts alone, Judge Buchwald denied Defendant's Motion to vacate the attachment:

> Thus, this case is distinguishable from *Greenwich Marine* . . ., relied on by [Defendant], ***because in that case there was little indication that the damage claim would actually be passed through a chain of charter parties and asserted against the Plaintiff***. After reviewing the record, we find that it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that Plaintiff has a reasonable belief that it faces potential liability totaling $350,000 for those damages. We therefore find it appropriate to include this claim in the total amount that Plaintiff is entitled to attach as security.

2005 U.S. Dist. LEXIS 22409, *8.

Equally supporting EXMAR's argument here is Judge Chin's decision in *Eitzen Sealift A.S. v. Cementos Andinos Dominicanos, S.A.*, 05-4550, 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9, 2005). In *Eitzen*, Plaintiff obtained a Rule B attachment order to secure, *inter alia*, an indemnity claim from the beneficial owner and time charterer of the vessel stemming from the grounding of the vessel (the hull claim) and an indemnity cargo claim from a third party. Judge Chin allowed the attachment to be maintained to secure the hull claim that had been asserted down the chain of charter parties, from the beneficial owner to time charterer to Plaintiff, even though no arbitration proceeding had been commenced against the Plaintiff by either the beneficial owner or the time charterer. 2005 U.S. Dist. LEXIS 19876, *3-8. Further, Judge Chin also permitted the attachment to remain in respect of the cargo claim on the basis that the third party had initiated proceedings against the Plaintiff. 2005 U.S. Dist. LEXIS 19876, *9-10.[4]

---

[4] Judge Chin only vacated that portion of the attachment that involved the costs and fees associated with the London arbitration in respect of the hull claim because no such arbitration proceedings had yet commenced and it was likely that no such proceeding would begin if New York arbitrators decided that the hull claim should be litigated in the New York arbitration by all the parties involved in the dispute. Hence, those costs were too remote and speculative.

It is also very important for the Court to note that EXMAR has incurred costs and legal

fees in the sum of £12,000 in defending Eitzen/SIGAS claims in London arbitration. This fact

supports EXMAR's entitlement to security from POLAR. In *Ellerman Lines, Ltd. v. Atlantic and*

*Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964), *cert. denied*, 382 U.S. 812 (1965), the

Third Circuit ruled that a libel in admiralty for indemnity is not premature where the party

seeking indemnity has incurred expenses in defending the claim against it which forms the basis

of the indemnity. The decisions of this Court, within the context of a Rule B application, are not

to the contrary. *See e.g. Staronset*, 659 F. Supp. at 190; *Daeshin Shipping*, 2005 U.S. Dist.

LEXIS 22409, *6, n.5; *Eitzen*, 2005 U.S. Dist. LEXIS 19876.

The *Bottiglieri* decision relied upon by POLAR is factually inapposite. A close reading of

*Bottiglieri* reveals that the allegations contained in the Rule B Plaintiff's Complaint asserted that

the Defendant's liability was **contingent** upon the finding of liability of the Rule B Plaintiff to

the third party claimant, and hence Plaintiff's claim was not a "first way" indemnity claim but

rather an implied "third way" indemnity claim:

> . . . Plaintiff's claim falls squarely within the Caroline P's [third way] category.
> This is ***clear from the allegations of the complaint***, which trace the bulk of the
> monetary claim made against Defendant to the damages claimed by the Owner ***and
> state plainly that "Defendant is liable to indemnify Plaintiff for all amounts
> claimed against it by [the Owner]."*** ***This claim for indemnity*** is not ripe under
> English law.

*Bottiglieri*, 472 F. Supp. 2d at 591 (emphasis supplied).

In our case, as attested by Mr. Dench and as confirmed by a review of EXMAR's

Complaints, all of EXMAR's claims (whether in relation to the EXMAR-POLAR MOAs and/or

charter parties) are not dependent on the claims Eitzen/SIGAS has asserted against EXMAR on

the basis of the Eitzen/SIGAS-EXMAR MOAs and charter parties. In fact, it cannot be

sufficiently emphasized that EXMAR can directly sustain its claims against POLAR in their

arbitration proceedings, regardless of the outcome of the arbitration between EXMAR and Eitzen/SIGAS. This argument is all the more compelling here since EXMAR's speed claims based upon the EXMAR-POLAR charter parties will be based on longer periods of time and different hire rates. Thus, EXMAR's claims against POLAR will be different from the claims being pursued by Eitzen/SIGAS against EXMAR. (Dench Decl., ¶¶9, 19).

Further, in *Bottiglieri,* unlike our case, there was no evidence that the third party claimant had taken self-measures to secure its claim against the Rule B Plaintiff. The parties had merely stated their intention to arbitrate their disputes. In our case, Eitzen/SIGAS has already deducted $275,000 in respect to the POLAR BELGICA claim. For example, in *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007), the court disregarded the prematurity of the indemnity claim because Plaintiff was forced, following cargo owner's arrest of Plaintiff's vessel and concomitant lawsuit in Yemen, to file a million dollar bank guarantee in the Aden Commercial Court to release the vessel from arrest and to secure the cargo owner's claim. As Judge Hellerstein remarked, "In effect, [Plaintiff] has had to prepay a debt owed by it or [by Defendant], as may be determined, and should have the right by attachment to secure its claim against [Defendant] for indemnity, just as the consignee of the goods gained security against [Plaintiff] by arresting a vessel owned by [Plaintiff]." *Navalmar*, 485 F. Supp. at 404.

Finally, it should be noted that another factor tipping the balance decisively in EXMAR's favor is that POLAR has no assets, as the vessels at issue have been sold to Eitzen/SIGAS. (Ross Aff., ¶2). If the Court vacates the attachment, EXMAR will have no practical means to enforce any final arbitration awards, and such awards would be rendered meaningless. As Judge

Hellerstein has stated in permitting Rule B attachments in the context of indemnity admiralty claims:

> The entire point of an attachment, as a provisional remedy before trial, is to secure a Plaintiff's claim before it can be adjudicated. In a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance.

*Navalmar*, 485 F. Supp. 2d at 404. *See also Sonito*, 478 F. Supp. 2d at 542 ("If it is finally determined by the English proceedings that the claim of the Plaintiff in this Court had accrued and constituted a valid maritime claim at the time of the Rule B attachment, then the attachment should not have been vacated, and in the interim the Defendant may have dissipated or hidden its assets, thereby unfairly depriving Plaintiff of security Rule B is intended to confer").

It is noteworthy to point out that the timing of POLAR's Motion coincides with the scheduled April 22, 2008 Mediation Meeting of POLAR, EXMAR and Eitzen/SIGAS. There is no logical explanation for POLAR's filing the instant motion now after this case has been pending before the Court for approximately a year a half. Apparently, POLAR, as an assetless company, wishes to attempt to reduce the only source of security EXMAR possesses as strong-arm tactic for the scheduled Mediation. The Court should not condone such a tactic.

In sum, it would be inequitable and contrary to this Court's exercise of discretion to allow POLAR to vacate or reduce a Rule B attachment that is procedurally sound on the ground that EXMAR's liability to Eitzen/SIGAS is "contingent" and "speculative", when it is clear that Eitzen/SIGAS is not only actively pursuing its claims in arbitration against EXMAR but also Eitzen/SIGAS has already taken matters into its own hands by deducting $275,000 and EXMAR has incurred approximately £12,000 in defense costs.

## **CONCLUSION**

For all the foregoing reasons, EXMAR respectfully requests that this Court deny POLAR's Motion and allow the challenged attachment to remain fully in place, and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 18, 2008


FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.


By: _____
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)
80 Pine Street
New York, New York 10005
(212) 425-1900


TO:    BLANK ROME, LLP
Attorneys for Defendants
405 Lexington Avenue
New York, N.Y. 10174

Attn: Jeremy J.O. Harwood, Esq,
(212) 885-5000