FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Fax: (212) 425-1900
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
EXMAR SHIPPING N.V.,

               Plaintiff,

        -against-

POLAR SHIPPING S.A. and
POLAR SHIPPING CO., LTD.,

            Defendants.
-----------------------------------------------------x

**06 CIV 12991 (HB)**

**AFFIDAVIT IN OPPOSITION OF
DEFENDANT'S MOTION TO
VACATE OR REDUCE
PLAINTIFF'S MARITIME
ATTACHMENT**

JAMES L. ROSS, being duly sworn, deposes and says:

1.    I am a member of the firm of Freehill Hogan & Mahar, LLP, attorneys representing the Plaintiff Exmar Shipping N.V. ("EXMAR") in the subject litigation. I am familiar with the facts and surrounding circumstances of this Rule B attachment litigation in aid of London arbitration awards.

2.    I received initial instructions to commence this Rule B attachment proceeding from EXMAR because they had substantial maritime claims against the Defendants Polar Shipping S.A. and Polar Shipping Co., Ltd. (hereinafter "POLAR") arising from breach of warranties contained in MOA and Charter Party contracts entered into by EXMAR and POLAR. EXMAR advised that the three vessels owned by POLAR (M/V POLAR BELGICA, M/V POLAR DISCOVERY and M/V POLAR ENDURANCE), which are referred to in this

litigation, were basically the only assets of the Defendants. As the three vessels were being sold to EXMAR, who in turn was selling them to Eitzen/SIGAS, our instructions were to seek an attachment of the sale proceeds for these vessels before the proceeds reached POLAR. Otherwise, EXMAR would likely be irreparably harmed by not having any security for their claims in London arbitration, which was called for in the MOA and Charter Party contracts.

3.      After obtaining an *ex parte* Process of Maritime Attachment and Garnishment pursuant to Plaintiff's Verified Complaint dated November 7, 2006 and Amended Verified Complaint dated November 9, 2006 (Exhibit E)[1], Plaintiff EXMAR succeeded in attaching $1,604,540.14 of the vessel sale proceeds, which were being wire transferred to the Defendants in conjunction with the sale of the three vessels.

4.      The Maritime Attachment related to various claims referred to in the Amended Verified Complaint by EXMAR against POLAR under their contracts. One of these claims in the sum of $179,528.45 concerned the M/V POLAR ENDURANCE for alleged cargo/loss due to alleged defects with this vessel.

5.      Apparently, POLAR had P & I insurance with Steamship Mutual Underwriting Association (Bermuda) Ltd. ("STEAMSHIP") for liabilities relating to cargo loss/damage. As such, POLAR requested EXMAR to release $275,000 of the attached funds in exchange for accepting substitute security in the form of a STEAMSHIP P & I Letter of Undertaking (LOU). While EXMAR was willing to accommodate POLAR and accept a properly worded LOU, the original LOU language proposed by POLAR was not acceptable. This led to POLAR filing a Motion on January 31, 2007 asking that the Court direct EXMAR to accept the offered LOU in exchange for releasing $275,000, which had been attached as security for this cargo claim.

---

[1]  Plaintiff has prepared and submitted to your Honor a March 4, 2008 fax with attached Second Amended Verified Complaint (attached as Exhibit F). Plaintiff seeks leave of Court to allow its filing.

Rather than require POLAR to incur the cost of posting a bond, as referred to in the Federal Rules of Civil Procedure, EXMAR/POLAR agreed upon appropriate wording of the LOU. This LOU was accepted by EXMAR in consideration for releasing $275,000 of the attached funds relating to this claim. Attached is a copy of the original LOU (Exhibit G) signed by opposing counsel against which $275,000 of the attached funds had been released to POLAR.

6.    Since the parties had entered into this LOU contractual arrangement, there are no funds currently under attachment pertaining to the cargo damage claim ($179,528.45). Consequently, I fail to see any relevance in opposing counsel arguing the nature of the cargo claim in the context of their Motion now seeking to vacate or reduce the amount of funds currently remaining under attachment.

7.    In any case, I should point out that in Paragraph 5 of the LOU agreement, POLAR expressly agreed that EXMAR's acceptance of the LOU was "without prejudice to EXMAR's right to maintain the attached funds being held in the Court Registry for the Southern District of New York as security for the remaining claims referred to in the Amended Complaint".

8.    In addition, under the terms of the LOU agreement between EXMAR/POLAR, it is clearly stated that "this agreement shall be governed by English law and any dispute arising hereunder shall be submitted to the exclusive jurisdiction of the English Courts". (See pg. 2 of attached LOU).

9.    Under the circumstances, the facts and surrounding circumstances of the agreed upon LOU are not relevant to the Motion seeking to vacate or reduce the amount of funds currently being held under attachment relating to other claims. Furthermore, if POLAR has any dispute regarding the LOU, pursuant to the expressed terms of this agreement, it is

subject to English law and the exclusive jurisdiction of the English Courts.

DATED:    March 18, 2008
          New York, New York

JAMES L. ROSS

Sworn to before me this _18th_
day of March, 2008.

Notary Public

MARTHA L. BROWN
Notary Public, State of New York
No. 01BR6067399
Qualified in Kings County
Certificate Filed in New York County
Commission Expires December 10, 2009

# EXHIBIT "E"

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Fax: (212) 425-1900
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

06 CIV 12991 (HB)

EXMAR SHIPPING N.V.,

           Plaintiff,

   -against-

POLAR SHIPPING S.A. and
POLAR SHIPPING CO., LTD.,

           Defendants.

-----------------------------------------------------x

**AMENDED VERIFIED**
**COMPLAINT**

      Plaintiff EXMAR SHIPPING N.V. ("EXMAR"), through its attorneys FREEHILL

HOGAN & MAHAR, LLP, as and for its Amended Verified Complaint against Defendants

POLAR SHIPPING S.A., and POLAR SHIPPING CO., LTD. INC. (hereinafter, collectively,

"POLAR SHIPPING"), alleges upon information and belief as follows:

### JURISDICTION

     1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

by Defendants POLAR SHIPPING. The case also falls within the Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the

New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

codified at 9 U.S.C. §201 *et seq.* and/or the Arbitration Act, 9 U.S.C. §1 *et seq.* and this Court's

federal question jurisdiction pursuant to 28 U.S.C. §1331.

NYDOCS1/271953.1

## THE PARTIES

2.    At all times relevant hereto, Plaintiff EXMAR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at De Gerlachekaai 20, 2000 Antwerp, Belgium.

3.    At all times relevant hereto, Defendant POLAR SHIPPING S.A. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at Samuel Lewis Avenue and 53rd Street, Panama City, Republic of Panama.

4.    At all times relevant hereto Defendant POLAR SHIPPING CO., LTD.. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office at 8-55, Kokubu 1-chome, Imabari City, Ehime, Japan.

5.    Upon information and belief, Defendants POLAR SHIPPING S.A. and Defendant POLAR SHIPPING CO., LTD. are alter egos of one another and share offices, officers, directors, shareholders, employees and/or commingle funds, or that one entity so dominates and controls the other that their separate corporate identities have been lost and that they function as a single entity and should be held accountable for the debts of one another.

6.    Upon information and belief, Defendant POLAR SHIPPING CO., LTD. is the agent of Defendant s S.A. and is in the business of handling, sending and receiving the property of Defendant POLAR SHIPPING S.A.

## EXMAR'S CLAIM UNDER THE POLAR BELGICA AGREEMENT

7.    On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

8.    On the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

9.    Both Memoranda of Agreement were back-to-back transactions and contained similar contract provisions.

10.    Pursuant to both Memoranda of Agreement the vessel was required to be delivered without conditions or recommendations from Class Society Surveyors.

11.    In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,990,000 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR BELGICA by Sigas.

12.    Upon delivery of the M/V POLAR BELGICA to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

13.    The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Sigas. As a result, Sigas/Eitzen deducted $275, 000 from the Termination Fee Eitzen was required to pay to EXMAR.

14.    The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

15.    As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Plaintiff EXMAR has suffered damages in the amount of $275,000, for which Defendants are liable to Plaintiff.

16.    The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

### EXMAR'S CLAIM UNDER THE POLAR DISCOVERY AGREEMENT

17.    On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

18.    On the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

19.    Both Memoranda of Agreement were back-to-back transactions and contained similar contract provisions.

20.    Pursuant to both Memoranda of Agreement the vessel was required to be delivered without conditions or recommendations from Class Society Surveyors.

21.    In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,820,100 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR DISCOVERY by Sigas.

22.    Upon delivery of the M/V POLAR DISCOVERY to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

23.    The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Sigas. As a result, Sigas/Eitzen have claimed a deduction in the sum of $430,000 from the Termination Fee Eitzen was required to pay to EXMAR.

24.    The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

25.    As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $430,000.

26.    The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## EXMAR'S CLAIM UNDER THE POLAR ENDURANCE CHARTER PARTY

27.    On or about April 20, 2004, EXMAR, in the capacity of charterer, and Defendants POLAR SHIPPING, as owners, entered into a maritime contract of charter party on the Shelltime 4 form for the use and operation of the M/V POLAR ENDURANCE.

28.    EXMAR charter the vessel to a third party. During a voyage between Pajanton and Antwerp, between June 16 and July 2, 2004, as a result of the problems with the vessel's PS R22 compressor, the vessel was unable to cool the cargo effectively, which failure resulted in cargo damage.

29.    As a result of the cargo damage, the third party deducted charter hire which was owed and due to EXMAR in the sum of $179,528.45.

30.    The failure of the vessel's PS R22 compressor constituted a breach of the April 20, 2004 charter party.

31.    As a result of Defendants POLAR SHIPPING's breach of the charter party, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $179,528.45.

32.    Although duly demanded, Defendants have refused to remit payment in the sum of $179,528.45.

33.    The April 20, 2004 charter party between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## EXMAR'S SPEED CLAIMS UNDER THE POLAR BELGICA, POLAR DISCOVERY AND POLAR ENDURANCE CHARTER PARTIES

34.    EXMAR, as charterer, and Defendants POLAR SHIPPING, as owners, entered into three maritime contracts of charter party, to wit, (a) a time charter party for the use and operation of the M/V POLAR BELGICA; (b) a time charter party for the use and operation of the M/V POLAR DISCOVERY; and (c) a time charter party for the use and operation of the M/V POLAR ENDURANCE. In each of these charter parties, Defendants POLAR SHIPPING warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

35.    EXMAR, in turn, as disponent owner, entered into three back-to-back charter party contracts with Eitzen, as charterer, for the use and operation of the M/V POLAR BELGICA, M/V POLAR DISCOVERY and M/V POLAR ENDURANCE. Being back-to-back contracts, the EXMAR-Eitzen charters similarly contained a provision in which EXMAR warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

36.    Defendants POLAR SHIPPING tendered delivery of the vessels to Plaintiff EXMAR which in turn tendered delivery to Eitzen, and the vessels commenced performance under the various charter parties.

37.    Following performance by the vessels, Eitzen has presented claims to EXMAR based on the alleged breach by EXMAR of the "guaranteed speed" provisions of the EXMAR-Eitzen charter parties.

38.    As a result of the alleged breach by EXMAR, Eitzen has presented the following speed claims against EXMAR: (a) $69,900.00 under the POLAR BELGICA charter; (b) $96,300.00 under the POLAR DISCOVERY charter; and (c) $120,650.00 under the POLAR ENDURANCE charter. Further, Eitzen has advised that it is in the process of preparing two additional speed claims in the amount of $87,000.00. As a result, Eitzen's speed claims against EXMAR total the amount of $373,850.00.

39.    The alleged failure of the vessels to reach the "guaranteed speed" constituted a breach of the time charter parties entered into between Plaintiff EXMAR and Defendants POLAR SHIPPING.

40.    As a result of their breach of the POLAR SHIPPING-EXMAR charter parties, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $373,850.00.

41.    The charter parties between Plaintiff EXMAR and Defendants POLAR SHIPPING call for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## RULE B MARITIME ATTACHMENT

42.    This action is brought in order to obtain security in favor of Plaintiff in respect to Plaintiff's claims against Defendants POLAR SHIPPING which are subject to arbitration in

London pursuant to English law in accordance with the terms of the aforementioned Memoranda of Agreement and charter parties. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorneys' fees and costs in the arbitration as well as interest, all of which are recoverable under English law.

43.    Upon information and belief, and after investigation, neither Defendant POLAR SHIPPING S.A. nor Defendant POLAR SHIPPING CO., LTD. can be "found" within this District for purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, hire, of, belonging to, due or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of their names as may be held, received, or transferred in either of their own names or as may be held, received or transferred for the benefit of either entity, at, moving through, or within the possession, custody or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, and/or other institutions or such other garnishees to be named.

44.    The total amount of Plaintiff's claim sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by EXMAR against Defendants includes:

    a.    $275,000 in respect of the POLAR BELGICA claim;

b.   $430,000 in respect of the POLAR DISCOVERY claim;

c.   $179,528.45 in respect of the POLAR ENDURANCE cargo claim;

d.   $373,850.00 in respect of EXMAR's speed claims;

e.   Interest in the amount of $246,161.69 calculated on the sum of $1,258,378.45 at the rate of 6% per annum, compounded quarterly, for three years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable in arbitration under English law;

f.   Estimated costs, including legal fees, of London arbitration, which are recoverable, in the amount of $100,000.00.

For a total claim amount sought to be attached of **$1,604,540.14**.

WHEREFORE, PLAINTIFF prays:

a.   That process in due form of a law according to the practice of this Court issue against Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., citing them to appear and answer the foregoing, failing which a default will be taken against them, jointly and severally, for the principal amount of the claim of $1,258,378.45, plus interest, costs and attorneys' fees;

b.   That Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. be compelled to respond in London arbitration;

c.   That if Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., up to and including

the claim of **$1,604,540.14** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, of, belonging to, due or being transferred from or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in their own names or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, and/or other institutions or such other garnishees to be named;

d.    That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
      November 9, 2006

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Plaintiff
                              EXMAR SHIPPING N.V.

           By: _____
                    James L. Ross (JR 6411)
                    Manuel A. Molina (MM 1017)
                    80 Pine Street
                    New York, NY  10005
                    Telephone: (212) 425-1900
                    Facsimile: (212) 425-1901

## ATTORNEY VERIFICATION

State of New York )
) ss.:
County of New York )

JAMES L. ROSS, being duly sworn, deposes and says as follows:

1.     I am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding the claims.

3.     The reason this Verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
James L. Ross

Sworn to before me this
9 day November 2006

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2008

# EXHIBIT "F"

LAW OFFICES OF

**FREEHILL HOGAN & MAHAR LLP**

80 PINE STREET

NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900

FACSIMILE (212) 425-1901

E-MAIL: reception@freehill.com

www.freehill.com

GEORGE B. FREEHILL
WILLIAM L. JUSKA, JR.
JAMES L. ROSS*
ERIC E. LENCK
JOHN J. WALSH*
PATRICK J. BONNER*
PETER J. GUTOWSKI
MARK F. MULLER
WAYNE D. MEEHAN*
DON P. MURNANE, JR.△
THOMAS M. RUSSO
THOMAS M. CANEVARI †
MICHAEL FERNANDEZ*
JOHN F. KARPOUSIS*△
MICHAEL E. UNGER*†
WILLIAM J. PALLAS*
GINA M. VENEZIA*△
LAWRENCE J. KAHN*
BARBARA G. CARNEVALE*
MANUEL A. MOLINA
JUSTIN T. NASTRO*
PAMELA L. SCHULTZ**†
DANIEL J. FITZGERALD*†△
MICHAEL C. ELLIOTT*
JAN P. GISHOLT†

\*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CONNECTICUT
△ALSO ADMITTED IN WASHINGTON, D.C.
*ALSO ADMITTED IN LOUISIANA

NEW JERSEY OFFICE
549 SUMMIT AVENUE
JERSEY CITY, N.J. 07306-2701
TELEPHONE: (973) 623-5514
FACSIMILE: (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE: (203) 921-1913
FACSIMILE: (203) 358-8377

March 4, 2008

Our ref: 527-06/ROSS

**VIA FAX NO: 212 805 7901**
The Honorable Harold Baer, Jr.
Daniel Patrick Moynihan
United States Courthouse
U.S. District Court Southern District of N.Y.
500 Pearl Street – Room 2230
New York, New York 10007

RE:    Exmar Shipping N.V. v. Polar Shipping S.A. and Polar Shipping Co. Ltd.
       06 CV 12991 (HB)

Dear Judge Baer:

    As mentioned in our February 27, 2008 fax to the Court, the Defendants have filed a Motion on February 25, 2008 seeking to vacate the Plaintiff's Rule B attachment and have the litigation dismissed. Based upon your Individual Practice Rule 4 A i pertaining to Motions, once a Motion to Dismiss the Complaint has been filed, the non-moving party must within ten (10) days of receipt of that Motion, advise the Court and its adversary of any intention to amend the Complaint. This letter will serve as our notification to the Court that Plaintiff Exmar Shipping N.V. intends to file the attached Second Amended Complaint.

    As reflected in our earlier status report to the Court, the purpose of this litigation is to obtain security in aid of London arbitration. Consequently, there has been no discovery in this litigation. With the filing of the above Motion, the Defendants filed their Answer to the Amended Complaint on February 25, 2008. As such, we will need consent of opposing counsel or leave of Court to file the attached Second Amended Complaint. Last week we provided opposing counsel with a copy of the Second

Amended Complaint and asked for their consent for filing in lieu of our seeking leave of Court. To date, Blank Rome has not consented.

The new Complaint is designed to clarify the nature of the original claims set forth in the Amended Complaint and it adjusts the dollar amounts of some of these claims based upon more recent information we received from London. No new claims have been added to the Second Amended Complaint. Consequently, we believe that there would be no prejudice to the Defendants for the Court to grant leave.

We respectfully submit that pursuant to Rule 15(a) of the Federal Rule of Civil Procedure, justice will best be served by the Court allowing the filing of this Second Amended Complaint. As such, we respectfully ask for leave of Court to file the attached Second Amended Complaint.

Respectfully submitted,
FREEHILL HOGAN & MAHAR, LLP

James L. Ross

JLR:lu

cc:    Blank Rome, LLP
       Attorneys for Defendants
       405 Lexington Avenue
       New York, New York 10174
       Attention: Jeremy J. O. Harwood, Esq.
       **Fax: 917-332-3720**

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Fax: (212) 425-1900
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EXMAR SHIPPING N.V.,

                     Plaintiff,

          -against-

POLAR SHIPPING S.A. and
POLAR SHIPPING CO., LTD.,

                     Defendants.
-----------------------------------------------------------x

**06 CIV 12991 (HB)**

**SECOND
AMENDED VERIFIED
COMPLAINT**

Plaintiff EXMAR SHIPPING N.V. ("EXMAR"), through its attorneys FREEHILL

HOGAN & MAHAR, LLP, as and for its Amended Verified Complaint against Defendants

POLAR SHIPPING S.A., and POLAR SHIPPING CO., LTD. INC. (hereinafter, collectively,

"POLAR SHIPPING"), alleges upon information and belief as follows:

## JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

by Defendants POLAR SHIPPING. The case also falls within the Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the

New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

codified at 9 U.S.C. §201 *et seq.* and/or the Arbitration Act, 9 U.S.C. §1 *et seq.* and this Court's

federal question jurisdiction pursuant to 28 U.S.C. §1331.

## THE PARTIES

2.     At all times relevant hereto, Plaintiff EXMAR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at De Gerlachekaai 20, 2000 Antwerp, Belgium.

3.     At all times relevant hereto, Defendant POLAR SHIPPING S.A. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at Samuel Lewis Avenue and 53rd Street, Panama City, Republic of Panama.

4.     At all times relevant hereto Defendant POLAR SHIPPING CO., LTD.. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office at 8-55, Kokubu 1-chome, Imabari City, Ehime, Japan.

5.     Upon information and belief, Defendants POLAR SHIPPING S.A. and Defendant POLAR SHIPPING CO., LTD. are alter egos of one another and share offices, officers, directors, shareholders, employees and/or commingle funds, or that one entity so dominates and controls the other that their separate corporate identities have been lost and that they function as a single entity and should be held accountable for the debts of one another.

6.     Upon information and belief, Defendant POLAR SHIPPING CO., LTD. is the agent of Defendants S.A. and is in the business of handling, sending and receiving the property of Defendant POLAR SHIPPING S.A.

## EXMAR'S CLAIM UNDER THE POLAR BELGICA AGREEMENT

7.     On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

8.    On or about the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

9.    Both Memoranda of Agreement were back-to-back transactions and contained similar contract provisions.

10.    Pursuant to both Memoranda of Agreement the vessel was required to be delivered to the respective buyers EXMAR and Sigas without conditions or recommendations from Class Society Surveyors.

11.    In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,990,000 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR BELGICA by Sigas.

12.    Upon delivery of the M/V POLAR BELGICA by POLAR to EXMAR and from EXMAR to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

13.    The conditions of class found by the surveyors constituted an alleged breach of the Memorandum of Agreement between POLAR and EXMAR and EXMAR and Sigas.  As a result, Sigas/Eitzen deducted $275,000.00 from the termination Fee Eitzen was required to pay EXMAR.

14.    The conditions of class found by the Sigas surveyors constituted a breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

15.     As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Plaintiff EXMAR has suffered damages in the amount of $362,947.31, for which Defendants are liable to Plaintiff.

16.     The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

### EXMAR'S CLAIM UNDER THE POLAR DISCOVERY AGREEMENT

17.     On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

18.     On or about the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

19.     Both Memorandum of Agreement were back-to-back transactions and contained similar contract provisions.

20.     Pursuant to both Memorandum of Agreement the vessel was required to be delivered without conditions or recommendations from Class Society Surveyors.

21.     In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,820,100 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR DISCOVERY by Sigas.

22.     Upon delivery of the M/V POLAR DISCOVERY by POLAR SHIPPING to EXMAR and from EXMAR to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

23.     The conditions of class found by the surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Sigas. As a result, Sigas/Eitzen have claimed a deduction in the sum of $475,408.45 from the Termination Fee that Eitzen was required to pay EXMAR.

24.     The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

25.     As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $475,408.45.

26.     The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.


### EXMAR'S CLAIM UNDER THE POLAR ENDURANCE CHARTER PARTY

27.     On or about April 20, 2004, EXMAR, in the capacity of charterer, and Defendants POLAR SHIPPING, as owners, entered into a maritime contract of charter party on the Shelltime 4 form for the use and operation of the M/V POLAR ENDURANCE.

28.     EXMAR chartered the vessel to a third party. During a voyage between Pajanton and Antwerp, between June 16 and July 2, 2004, as a result of the problems with the vessel's PS R22

compressor, the vessel was unable to cool the cargo effectively, which failure resulted in cargo damage.

29.    As a result of the cargo damage, the third party deducted charter hire which was owed and due to EXMAR in the sum of $179,528.45.

30.    The failure of the vessel's PS R22 compressor constituted a breach of the April 20, 2004 charter [arty.

31.    As a result of Defendants POLAR SHIPPING's breach of the charter party, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $179,528.45.

32.    Although duly demanded, Defendants have refused to remit payment in the sum of $179,528.45.

33.    The April 20, 2004 charter party between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## EXMAR'S SPEED CLAIMS UNDER THE POLAR BELGICA, POLAR DISCOVERY AND POLAR ENDURANCE CHARTER PARTIES

34.    EXMAR, as charterer, and Defendants POLAR SHIPPING, as owners, entered into three maritime contracts of charter party, to wit, (a) a time charter party for the use and operation of the M/V POLAR BELGICA; (b) a time charter party for the use and operation of the M/V POLAR DISCOVERY; and (c) a time charter party for the use and operation of the M/V POLAR ENDURANCE. In each of these charter parties, Defendants POLAR SHIPPING warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

35.    EXMAR, in turn, as disponent owner, entered into three back-to-back charter party contracts with Eitzen, as charterer, for the use and operation of the M/V POLAR BELGICA, M/V POLAR DISCOVERY and M/V POLAR ENDURANCE. Being back-to-back contracts, the EXMAR-Eitzen charters similarly contained a provision in which EXMAR, as disponent owner, warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

36.    Defendants POLAR SHIPPING tendered delivery of the vessels to Plaintiff EXMAR which in turn tendered delivery to Eitzen, and the vessels commenced performance under the various charter parties.

37.    Following performance by the vessels, Eitzen has presented claims to EXMAR based on the alleged breach by EXMAR of the "guaranteed speed" provisions of the EXMAR-Eitzen charter parties.

38.    Following performance by the vessels, EXMAR had asserted claims against POLAR under their charter parties for alleged breach of the "guaranteed speed" provision contained therein.

39.    As a result of this alleged breach by Defendants POLAR SHIPPING, EXMAR has asserted the following speed claims against POLAR SHIPPING: (a) $615,468.44 under the POLAR BELGICA charter; (b) $96,300.00 under the POLAR DISCOVERY charter; and (c) $327,880.64 under the POLAR ENDURANCE charter. These speed claims by EXMAR against POLAR SHIPPING total the amount $1,039,649.

40.    The alleged failure of the vessels to reach "guaranteed speed" constituted a breach of the time charter parties entered into between Plaintiff EXMAR and Defendants POLAR SHIPPING.

41.    As a result of their breach of the POLAR SHIPPING-EXMAR charter parties, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $1,039,649.

42.    The charter parties between Plaintiff EXMAR and Defendants POLAR SHIPPING call for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## RULE B MARITIME ATTACHMENT

43.    This action is brought in order to obtain security in favor of Plaintiff in respect to Plaintiff's claims against Defendants POLAR SHIPPING which are subject to arbitration in London pursuant to English law in accordance with the terms of the aforementioned Memorandum of Agreement and charter parties. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorneys' fees and costs in the arbitration as well as interest, all of which are recoverable under English law.

44.    Upon information and belief, and after investigation, neither Defendant POLAR SHIPPING S.A. nor Defendant POLAR SHIPPING CO., LTD. can be "found" within this District for purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, hire, of, belonging to, due or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of their names as may be held, received, or transferred in either of their own names or as may be held, received or transferred for the benefit of either entity, at, moving through, or within the possession, custody

or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, Court's Regiatry for the Southern District of New York, and/or other institutions or such other garnishees to be named.

45.    The total amount of Plaintiff's claim sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by EXMAR against Defendants includes:

a.  $362,947.31 in respect of the POLAR BELGICA claim;

b.  $475,408.45 in respect of the POLAR DISCOVERY claim;

c.  $1,039,649.00 in respect of EXMAR's speed claims;

d.  Interest in the amount of $358,728.92 calculated on the sum of $1,878,004.70 at the rate of 6% per annum, compounded quarterly, for three years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable in arbitration under English law;

e.  Estimated costs, including legal fees, of London arbitration, which are recoverable, in the amount of $200,000.00.

For a total claim amount sought to be attached of **$2,436,732.90**.

WHEREFORE, PLAINTIFF prays:

a.    That process in due form of a law according to the practice of this Court issue against Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., citing them to appear and answer the foregoing,

failing which a default will be taken against them, jointly and severally, for the total amount of $2,436,732.90;

b.    That Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. be compelled to respond in London arbitration;

c.    That if Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., up to and including the claim of **$2,436,732.90** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, of, belonging to, due or being transferred from or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in their own names or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, Court's Registry for the Southern District of New York and/or other institutions or such other garnishees to be named;

d.      That Plaintiff have such other, further and different relief as this Court

may deem just and proper in the premises.

Dated: New York, New York
      February 29, 2008

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        EXMAR SHIPPING N.V.

By: _____
                   James L. Ross (JR 6411)
                   Manuel A. Molina (MM 1017)
                   80 Pine Street
                   New York, NY 10005
                   Telephone: (212) 425-1900
                   Facsimile: (212) 425-1901

## ATTORNEY VERIFICATION

State of New York    )

                   ) ss.:

County of New York   )

        JAMES L. ROSS, being duly sworn, deposes and says as follows:

        1.      I am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

        2.      The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding the claims.

        3.      The reason this Verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                       _____

                                             James L. Ross

Sworn to before me this
29th day of February, 2008

_____

Notary Public

**CLARE HENRY**
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

NY1DOCS1/299788.1

As reflected in our earlier status report to the Court, the purpose of this litigation is to obtain security in aid of London arbitration. Consequently, there has been no discovery in this litigation. With the filing of the above Motion, the Defendants filed their Answer to the Amended Complaint on February 25, 2008. As such, we will need consent of opposing counsel or leave of Court to file the attached Second Amended Complaint. Last week we provided opposing counsel with a copy of the Second Amended

As mentioned in our February 27, 2008 fax to the Court, the Defendants have filed a Motion on February 25, 2008 seeking to vacate the Plaintiff's Rule B attachment and have the litigation dismissed. Based upon your Individual Practice Rule 4 A ! pertaining to Motions, once a Motion to Dismiss the Complaint has been filed, the non-moving party must within ten (10) days of receipt of that Motion, advise the Court and its adversary of any intention to amend the Complaint. This letter will serve as our notification to the Court that Plaintiff Exmar Shipping N.V. intends to file the attached Second Amended Complaint.

Dear Judge Baer:

RE:    Exmar Shipping N.V. v. Polar Shipping S.A. and Polar Shipping Co. Ltd.
       06 CV 12991 (HB)

VIA FAX NO.: 212 805 7901
The Honorable Harold Baer, Jr.
Daniel Patrick Moynihan
United States Courthouse
U.S. District Court Southern District of N.Y.
500 Pearl Street – Room 2230
New York, New York 10007

March 4, 2008

Our ref: 527-06/ROSS

LAW OFFICES OF

FREEHILL, HOGAN & MAHAR LLP

80 PINE STREET
NEW YORK, N.Y. 10005-1759
TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

---

TX RESULT REPORT

NAME :FREEHILLHOGAN
TEL  :
DATE :MAR.04.2008 10:23

| SESSION | FUNCTION | NO. | DESTINATION STATION | DATE | TIME | PAGE | DURATION | MODE | RESULT |
|---------|----------|-----|---------------------|------|------|------|----------|------|--------|
| 1172 | TX | 001 | 7001#05270600#12128057901# | MAR.04 | 10:20 | 014 | 00h02min35s | ECM | OK |

NYDOCS1/293788.1

Complaint. Last week we provided opposing counsel with a copy of the Second
Amended Complaint. As such, we will need
their Answer to the Amended Complaint on February 25, 2008. As such, we will need
consent of opposing counsel or leave of Court to file the attached Second Amended
Complaint.

As reflected in our earlier status report to the Court, the purpose of this litigation
is to obtain security in aid of London arbitration. Consequently, there has been no
discovery in this litigation. With the filing of the above Motion, the Defendants filed
and have the litigation dismissed. Based upon your Individual Practice Rule 4.A.i
pertaining to Motions, once a Motion to Dismiss the Complaint has been filed, the non-
moving party must within ten (10) days of receipt of that Motion, advise the Court and its
adversary of any intention to amend the Complaint. This letter will serve as our
notification to the Court that Plaintiff Ixmar Shipping N.V. intends to file the attached
Second Amended Complaint.

As mentioned in our February 27, 2008 fax to the Court, the Defendants have
filed a Motion on February 25, 2008 seeking to vacate the Plaintiff's Rule B attachment

Dear Judge Baer:

RE:    Ixmar Shipping N.V. v. Polar Shipping S.A. and Polar Shipping Co. Ltd.
       06 CV 12991 (HB)

VIA FAX NO: 212 805 7901

The Honorable Harold Baer, Jr.
Daniel Patrick Moynihan
United States Courthouse
U.S. District Court Southern District of N.Y.
500 Pearl Street – Room 2230
New York, New York 10007

Our ref: 527-06/ROSS

March 4, 2008

LAW OFFICES OF

FREEHILL, HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

```
NAME :FREEHILLHOGAN
TEL  :
DATE :MAR.04.2008 10:27
```

### TX RESULT REPORT

| SESSION | FUNCTION | NO. | DESTINATION STATION | DATE | TIME | PAGE | DURATION | MODE | RESULT |
|---------|----------|-----|---------------------|------|------|------|----------|------|--------|
| 1173 | TX | 001 | 7001#05270600#19173323720# | MAR.04 | 10:23 | 014 | 00h03min35s | G3 | OK |

# EXHIBIT "G"



BLANK ROME LLP
COUNSELORS AT LAW

Phone:    (212) 885-5149
Fax:    (917) 332-3720
Email:    JHarwood@BlankRome.com

February 28, 2007

Exmar Shipping N.V.
c/o Freehill Hogan & Mahar LLP
80 Pine Street
New York NY 10005-1759
Attn: James L. Ross, Esq.

> RE:    EXMAR SHIPPING N.V. v. POLAR SHIPPING S.A., et al.
> 06 CV 12991 (HB)
> Our ref: 686545-00001

## LETTER OF UNDERTAKING

Dear Sirs:

On or about November 16, 2006, Exmar Shipping N.V. ("EXMAR") attached $1,604,540.14 belonging to Defendants Polar Shipping S.A. and Polar Shipping Co. Ltd. (hereinafter individually and/or collectively referred to as "POLAR") pursuant to Rule B of the Supplemental Rules for certain Admiralty and Maritime Claims and Asset Forfeiture Claims. By Court Order dated February 1, 2007, the garnishee bank ABN Amro Bank N.V. was directed to transfer $1,304,540.14 of these funds into the Court Registry for the Southern District Court of New York. The parties in the captioned litigation now wish to release $275,000 currently being held by the garnishee bank ABN-Amro Bank N.V. in exchange for this Letter of Undertaking (LOU) from The Steamship Mutual Underwriting Association (Bermuda) Ltd..



**BLANK** **ROME** LLP
COUNSELORS AT LAW

February 28, 2007
Page 2

It is agreed that this LOU will be accepted by EXMAR as security solely for the cargo claim identified below and that in consideration for this LOU, EXMAR will refrain from attaching, arresting or otherwise restraining any asset under the same ownership, associated ownership, control and/or management of POLAR in connection with said cargo claim identified as follows:

| | |
|---|---|
| Ship: | M.V. POLAR ENDURANCE |
| Cargo: | Ethylene |
| Incident: | Alleged cargo loss/damage arising from venting into the atmosphere of 222,464 mt ethylene during a voyage from Pajaritos, Mexico to Antwerp, Belgium. |
| Claims: | Indemnity and/or damages in respect of claims from cargo interests for loss/damage to the cargo arising out of or in connection with the above incident. |
| Amount: | $179,528.45 |

IT IS FURTHER AGREED THAT:

1. In the event of a final decree or arbitral award (after appeal), if any, being entered in favor of EXMAR against POLAR, then the undersigned Association agrees to pay and satisfy up to and not exceeding the sum of $179,528.45 in respect of the cargo claim identified plus interest and costs as may be awarded thereon or any lesser amount decreed by the court or arbitrators or settled between the parties without final decree being entered;

2. Upon demand, to cause to be filed a bond in form and sufficiency of surety satisfactory to you or the Court in the above amount for $179,528.45 plus interest and costs securing your claim in the aforementioned action up to the amount consistent with paragraph 1 above;



**BLANK** **ROME** LLP
COUNSELORS AT LAW

February 28, 2007
Page 3

3.    In the event the bond referred to in paragraph 2 above is filed, the undersigned shall have no further obligation under paragraph 2 above;

4.    This letter is written and provided entirely without prejudice as to any rights or defenses which the defendants may have, none of which is to be regarded as waived;

5.    It is further understood and agreed that this LOU is accepted by EXMAR without prejudice to EXMAR's right to maintain the attached funds being held in the Court Registry for the Southern District of New York as security for the remaining claims referred to in the Amended Complaint.

IT IS FURTHER AGREED that this agreement shall be governed by English law and any dispute arising hereunder shall be submitted to the exclusive jurisdiction of the English Courts.

It is understood and agreed that the execution of this letter by Jeremy J. O. Harwood shall not be construed as binding upon him personally nor binding on the firm of Blank Rome LLP but is to be binding only upon The Steamship Mutual Underwriting Association (Bermuda) Ltd.

Very truly yours,

THE STEAMSHIP MUTUAL UNDERWRITING
ASSOCIATION (BERMUDA) LTD.

BY:    _____
          Jeremy J. O. Harwood

(As Attorney-in-Fact for the above limited purpose only as per authority received from The Steamship Mutual Underwriting Association (Bermuda) Ltd.)