FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
EXMAR SHIPPING N.V.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Fax: (212) 425-1900
James L. Ross (JR 6411)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

EXMAR SHIPPING N.V.,

        Plaintiff,

    -against-

POLAR SHIPPING S.A. and
POLAR SHIPPING CO., LTD.,

        Defendants.
------------------------------------------------------x

06 CIV 12991 (HB)

**SECOND
AMENDED VERIFIED
COMPLAINT**

Plaintiff EXMAR SHIPPING N.V. ("EXMAR"), through its attorneys FREEHILL

HOGAN & MAHAR, LLP, as and for its Amended Verified Complaint against Defendants

POLAR SHIPPING S.A., and POLAR SHIPPING CO., LTD. INC. (hereinafter, collectively,

"POLAR SHIPPING"), alleges upon information and belief as follows:

## JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

by Defendants POLAR SHIPPING. The case also falls within the Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the

New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

codified at 9 U.S.C. §201 *et seq.* and/or the Arbitration Act, 9 U.S.C. §1 *et seq.* and this Court's

federal question jurisdiction pursuant to 28 U.S.C. §1331.

NYDOCS1/299789.1

## THE PARTIES

2.      At all times relevant hereto, Plaintiff EXMAR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at De Gerlachekaai 20, 2000 Antwerp, Belgium.

3.      At all times relevant hereto, Defendant POLAR SHIPPING S.A. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with a registered office at Samuel Lewis Avenue and 53rd Street, Panama City, Republic of Panama.

4.      At all times relevant hereto Defendant POLAR SHIPPING CO., LTD.. was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office at 8-55, Kokubu 1-chome, Imabari City, Ehime, Japan.

5.      Upon information and belief, Defendants POLAR SHIPPING S.A. and Defendant POLAR SHIPPING CO., LTD. are alter egos of one another and share offices, officers, directors, shareholders, employees and/or commingle funds, or that one entity so dominates and controls the other that their separate corporate identities have been lost and that they function as a single entity and should be held accountable for the debts of one another.

6.      Upon information and belief, Defendant POLAR SHIPPING CO., LTD. is the agent of Defendants S.A. and is in the business of handling, sending and receiving the property of Defendant POLAR SHIPPING S.A.

## EXMAR'S CLAIM UNDER THE POLAR BELGICA AGREEMENT

7.      On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

8.     On or about the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR BELGICA.

9.     Both Memoranda of Agreement were back-to-back transactions and contained similar contract provisions.

10.    Pursuant to both Memoranda of Agreement the vessel was required to be delivered to the respective buyers EXMAR and Sigas without conditions or recommendations from Class Society Surveyors.

11.    In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,990,000 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR BELGICA by Sigas.

12.    Upon delivery of the M/V POLAR BELGICA by POLAR to EXMAR and from EXMAR to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

13.    The conditions of class found by the surveyors constituted an alleged breach of the Memorandum of Agreement between POLAR and EXMAR and EXMAR and Sigas.  As a result, Sigas/Eitzen deducted $275,000.00 from the termination Fee Eitzen was required to pay EXMAR.

14.    The conditions of class found by the Sigas surveyors constituted a breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

15.    As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Plaintiff EXMAR has suffered damages in the amount of $362,947.31, for which Defendants are liable to Plaintiff.

16.    The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## EXMAR'S CLAIM UNDER THE POLAR DISCOVERY AGREEMENT

17.    On September 12, 2006, EXMAR, as purchaser, and Defendants POLAR SHIPPING, as sellers, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

18.    On or about the same date, EXMAR, as seller, and a third party Sigas (Singapore) Pte. Ltd. ("Sigas"), as buyer, entered into a Memorandum of Agreement for the sale-purchase of the existing vessel M/V POLAR DISCOVERY.

19.    Both Memorandum of Agreement were back-to-back transactions and contained similar contract provisions.

20.    Pursuant to both Memorandum of Agreement the vessel was required to be delivered without conditions or recommendations from Class Society Surveyors.

21.    In addition, Plaintiff EXMAR and Defendants POLAR SHIPPING and third party Eitzen Gas, AS ("Eitzen"), an affiliate of Sigas, executed a Tripartite Termination Agreement on September 12, 2006, whereby Eitzen was required to pay to EXMAR the sum of $3,820,100 (the "Termination Fee") upon, *inter alia*, the acceptance of the M/V POLAR DISCOVERY by Sigas.

22.    Upon delivery of the M/V POLAR DISCOVERY by POLAR SHIPPING to EXMAR and from EXMAR to Sigas, Class Surveyors inspected the vessel and found several deficiencies such that the vessel had conditions of class upon delivery.

23.    The conditions of class found by the surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Sigas.  As a result, Sigas/Eitzen have claimed a deduction in the sum of $475,408.45 from the Termination Fee that Eitzen was required to pay EXMAR.

24.    The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.

25.    As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $475,408.45.

26.    The September 12, 2006 Memorandum of Agreement between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.


**EXMAR'S CLAIM UNDER THE POLAR ENDURANCE CHARTER PARTY**


27.    On or about April 20, 2004, EXMAR, in the capacity of charterer, and Defendants POLAR SHIPPING, as owners, entered into a maritime contract of charter party on the Shelltime 4 form for the use and operation of the M/V POLAR ENDURANCE.

28.    EXMAR chartered the vessel to a third party. During a voyage between Pajanton and Antwerp, between June 16 and July 2, 2004, as a result of the problems with the vessel's PS R22

compressor, the vessel was unable to cool the cargo effectively, which failure resulted in cargo damage.

29.    As a result of the cargo damage, the third party deducted charter hire which was owed and due to EXMAR in the sum of $179,528.45.

30.    The failure of the vessel's PS R22 compressor constituted a breach of the April 20, 2004 charter [arty.

31.    As a result of Defendants POLAR SHIPPING's breach of the charter party, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $179,528.45.

32.    Although duly demanded, Defendants have refused to remit payment in the sum of $179,528.45.

33.    The April 20, 2004 charter party between EXMAR and POLAR SHIPPING calls for arbitration in London and application of English law.  EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.


**EXMAR'S SPEED CLAIMS UNDER THE POLAR BELGICA, POLAR DISCOVERY
AND POLAR ENDURANCE CHARTER PARTIES**


34.    EXMAR, as charterer, and Defendants POLAR SHIPPING, as owners, entered into three maritime contracts of charter party, to wit, (a) a time charter party for the use and operation of the M/V POLAR BELGICA; (b) a time charter party for the use and operation of the M/V POLAR DISCOVERY; and (c) a time charter party for the use and operation of the M/V POLAR ENDURANCE. In each of these charter parties, Defendants POLAR SHIPPING warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

35.    EXMAR, in turn, as disponent owner, entered into three back-to-back charter party contracts with Eitzen, as charterer, for the use and operation of the M/V POLAR BELGICA, M/V POLAR DISCOVERY and M/V POLAR ENDURANCE. Being back-to-back contracts, the EXMAR-Eitzen charters similarly contained a provision in which EXMAR, as disponent owner, warranted that the vessels would achieve a "guaranteed speed" of "about 15 knots."

36.    Defendants POLAR SHIPPING tendered delivery of the vessels to Plaintiff EXMAR which in turn tendered delivery to Eitzen, and the vessels commenced performance under the various charter parties.

37.    Following performance by the vessels, Eitzen has presented claims to EXMAR based on the alleged breach by EXMAR of the "guaranteed speed" provisions of the EXMAR-Eitzen charter parties.

38.    Following performance by the vessels, EXMAR had asserted claims against POLAR under their charter parties for alleged breach of the "guaranteed speed" provision contained therein.

39.    As a result of this alleged breach by Defendants POLAR SHIPPING, EXMAR has asserted the following speed claims against POLAR SHIPPING: (a) $615,468.44 under the POLAR BELGICA charter; (b) $96,300.00 under the POLAR DISCOVERY charter; and (c) $327,880.64 under the POLAR ENDURANCE charter. These speed claims by EXMAR against POLAR SHIPPING total the amount $1,039,649.

40.    The alleged failure of the vessels to reach "guaranteed speed" constituted a breach of the time charter parties entered into between Plaintiff EXMAR and Defendants POLAR SHIPPING.

41.    As a result of their breach of the POLAR SHIPPING-EXMAR charter parties, Defendants POLAR SHIPPING are liable to Plaintiff EXMAR in the amount of $1,039,649.

42.    The charter parties between Plaintiff EXMAR and Defendants POLAR SHIPPING call for arbitration in London and application of English law. EXMAR specifically reserves its rights to arbitrate the substantive matter at issue.

## RULE B MARITIME ATTACHMENT

43.    This action is brought in order to obtain security in favor of Plaintiff in respect to Plaintiff's claims against Defendants POLAR SHIPPING which are subject to arbitration in London pursuant to English law in accordance with the terms of the aforementioned Memorandum of Agreement and charter parties. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorneys' fees and costs in the arbitration as well as interest, all of which are recoverable under English law.

44.    Upon information and belief, and after investigation, neither Defendant POLAR SHIPPING S.A. nor Defendant POLAR SHIPPING CO., LTD. can be "found" within this District for purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, hire, of, belonging to, due or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of their names as may be held, received, or transferred in either of their own names or as may be held, received or transferred for the benefit of either entity, at, moving through, or within the possession, custody

or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, Court's Regiatry for the Southern District of New York, and/or other institutions or such other garnishees to be named.

45.    The total amount of Plaintiff's claim sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by EXMAR against Defendants includes:

    a.  $362,947.31 in respect of the POLAR BELGICA claim;

    b.  $475,408.45 in respect of the POLAR DISCOVERY claim;

    c.  $1,039,649.00 in respect of EXMAR's speed claims;

    d.  Interest in the amount of $358,728.92 calculated on the sum of $1,878,004.70 at the rate of 6% per annum, compounded quarterly, for three years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable in arbitration under English law;

    e.  Estimated costs, including legal fees, of London arbitration, which are recoverable, in the amount of $200,000.00.

For a total claim amount sought to be attached of **$2,436,732.90**.

    WHEREFORE, PLAINTIFF prays:

    a.  That process in due form of a law according to the practice of this Court issue against Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., citing them to appear and answer the foregoing,

failing which a default will be taken against them, jointly and severally, for the total amount of $2,436,732.90;

b.     That Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. be compelled to respond in London arbitration;

c.     That if Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD. cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD., up to and including the claim of **$2,436,732.90** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, of, belonging to, due or being transferred from or for the benefit of Defendants POLAR SHIPPING S.A. and POLAR SHIPPING CO., LTD.   (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in their own names or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to ABN Amro Bank, American Express Bank Ltd., Bank of America, N.A., BNP Paribas, Citibank N.A., Deutsche Bank Trust Company, HSBC and HSBC Bank USA N.A., JP Morgan Chase, Société Générale, Standard Chartered, The Bank of New York, Wachovia Bank, Court's Registry for the Southern District of New York and/or other institutions or such other garnishees to be named;

    d.    That Plaintiff have such other, further and different relief as this Court

may deem just and proper in the premises.

Dated: New York, New York
      February 29, 2008

                          FREEHILL HOGAN & MAHAR, LLP
                          Attorneys for Plaintiff
                          EXMAR SHIPPING N.V.

By:                              
                          James L. Ross (JR 6411)
                          Manuel A. Molina (MM 1017)
                          80 Pine Street
                          New York, NY 10005
                          Telephone: (212) 425-1900
                          Facsimile: (212) 425-1901

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

JAMES L. ROSS, being duly sworn, deposes and says as follows:

1.      I am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding the claims.

3.      The reason this Verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
                    James L. Ross

Sworn to before me this
29th  day of February, 2008

_____
        Notary Public
        MELISSA COLFORD
        Commissioner of Deeds
        City of New York-No. 5-1692
        Certificate Filed in New York
        Commission Expires 4/1/ 08

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                    ) ss.:
COUNTY OF NEW YORK   )

       I, LINDA L. URBANOWICZ, being sworn say:

       I am not a party to this action, am over 18 years of age and work at Freehill Hogan & Mahar LLP attorneys for the defendant. On March 19, 2008, I served the within **SECOND AMENDED VERIFIED COMPLAINT** on:

> BLANK ROME, LLP
> Attorneys for Defendants
> 405 Lexington Avenue
> New York, New York 10174
> Attn: Jeremy J.O. Harwood, Esq.

via e-mail and USPO regular mail by placing a true copy of said document, placed in a post-paid, properly addressed wrapper to the above mentioned recipient in the care and custody of the United States Post Office in a container designated for that purpose by the U.S. Post Office addressed to each of the aforementioned persons at the last known address set forth after each name.

                                        LINDA L. URBANOWICZ

Sworn to before me this
19th day of March 2008.

Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08

NYDOCS1/300994.1