BLANK ROME LLP
Attorneys for Defendants
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXMAR SHIPPING N.V.,<br><br>  Plaintiff,<br><br>v.<br><br>POLAR SHIPPING S.A., *et al.*,<br><br>  Defendants. | 06 CIV 12991(HB) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE OR VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS AND/OR IN THE ALTERNATIVE FOR <u>COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E</u>**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

129071.00601/6629709v.1

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT........................................................................................................................1

POINT I
   THE "TECHNICAL REQUIREMENTS" OF RULE B ARE NOT MET WHERE THE RULE
   B PLAINTIFF'S CAUSES OF ACTION CANNOT BE SUSTAINED UNDER THE
   GOVERNING LAW................................................................................................1

POINT II
   UNDER ENGLISH LAW THE MOA CLAIMS AND SPEED CLAIMS HAVE NOT
   ACCRUED ............................................................................................................2
      A.   EXMAR'S CHARACTERIZATION OF ITS CLAIMS IN ITS COMPLAINT
           CANNOT DISGUISE THEIR NATURE AS INDEMNITY CLAIMS..............3

POINT III
   EXMAR'S ARGUMENT THAT EVEN IF ITS MOA CLAIMS AND SPEED CLAIMS ARE
   INDEMNITY CLAIMS THEY GIVE RISE TO A RIGHT OF ATTACHMENT IS WRONG 5

POINT IV
   EXMAR'S PLEA FOR CONTINUING IMPROPER ATTACHMENTS BASED ON
   ALLEGED NECESSITY IS CONTRARY TO AQUA STOLI PRINCIPLES ..........................7

POINT V
   THE CLUB LOU DOES NOT MAKE IRRELEVANT THE IMPROPER BASIS FOR
   ATTACHMENT OF THE POLAR MONIES................................................................8

POINT VI
   IF THE ATTACHMENT IS NOT VACATED THEN, IN THE ALTERNATIVE, POLAR IS
   ENTITLED TO COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E ...................10

129071.00601/6629709v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2005).............7

*Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. 2007) ......................................................................................................................... 2, 6

*In re Cia Naviera Marasia S.A.*, 466 F. Supp. 900 (S.D.N.Y. 1979) ...................................9

*Greenwich Marine, Inc. v. S.S. ALEXANDER*, 339 F.2d 901 (2d Cir. 1965) ......................1

*Ronda Ship Management Inc. v. Doha Asian Games Organizing Committee*, 511 F. Supp. 2d 399 (S.D.N.Y. 2007) ...............................................................................1

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007) ...................................................................................................... 1, 7

*Suiko Steamship Co. Ltd. v. China National Chartering Corp.*, 2008 U.S. Dist. LEXIS 16512 (S.D.N.Y. Feb. 22, 2008) amended 2008 U.S. Dist. LEXIS 20313 (S.D.N.Y. Feb. 29, 2008) ..............................................................................2

*T&O Shipping, Ltd. v. Lydia Maritime Shipping Co. S.A.*, 415 F. Supp. 2d 310 (S.D.N.Y. 2006) ..........................................................................................................2

## MISCELLANEOUS

3 David E.R. Wolley, Benedict on Admiralty, § 61 at 7-10.4 (7th ed. 2006) ......................9

129071.00601/6629709v.1

## INTRODUCTION

Defendant Polar Shipping S.A. *et al.* (individually and/or collectively "Polar") respectfully submits this reply memorandum of law in support of its motion to reduce and/or vacate the order of maritime attachment and garnishment under Rule B or for counter-security.[1]

## ARGUMENT

### POINT I
### THE "TECHNICAL REQUIREMENTS" OF RULE B ARE NOT MET WHERE THE RULE B PLAINTIFF'S CAUSES OF ACTION CANNOT BE SUSTAINED UNDER THE GOVERNING LAW

Exmar's memorandum of law ("Brief") asserts that because it has "satisfied the technical requirements mandated by Rule B," i.e. of not being "found" under the two-prong test, it has carried its burden to show the attachment was properly ordered. It cites Ronda Ship Management Inc. v. Doha Asian Games Organizing Committee, 511 F. Supp.2d 399, 403-04 (S.D.N.Y. 2007) for the contention that "the Court looks only to the Complaint ...". Brief at 4. Exmar's argument that at a Rule E challenge the Court simply accepts the Complaint's pleadings is contrary to the controlling authority in Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). As stated in Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp.2d 532, 540-41

---

[1] Definitions, unless otherwise stated are taken from the opening brief dated February 25, 2008. The first declaration of Nicholas Burgess dated February 15, 2008 and his Supplemental Declaration dated April 7, 2008 are referred to, respectively, as "Burgess Dec. No. 1" and "No. 2").

1

(S.D.N.Y. 2007), "courts in this circuit have not been receptive to <u>contingent</u> indemnity claims as bases for maritime arrests [or] attachments."

Quite clearly those courts referred to in <u>Sonito</u>, as well as Judge Kaplan in <u>Bottiglieri di Navigazione SPA v. Tradeline LLC</u>, 472 F. Supp.2d 588 (S.D.N.Y. 2007), looked at the issue of the "doctrines of accrual," as permitted by <u>Greenwich Marine.</u>

Recently Judge Marreno in <u>Suiko Steamship Co. Ltd. v. China National Chartering Corp.</u>, 2008 U.S. Dist. LEXIS 16512 *7 (S.D.N.Y. Feb. 22, 2008), <u>amended</u> 2008 U.S. Dist. LEXIS 20313 (S.D.N.Y. Feb. 29, 2008) explained:

> The issue of whether Sanko's claim has accrued is to be determined by English law, as that is the law of the Charter Party. See <u>T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.</u>, 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) ("[T]he law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable.")

Exmar has not met its burden by its pleading.

### POINT II
### UNDER ENGLISH LAW THE MOA CLAIMS AND SPEED CLAIMS HAVE NOT ACCRUED

It is undisputed that the MOA Claims and Speed Claims, as defined in the first Burgess Declaration, have not accrued; and they are "contingent indemnity" claims. Exmar's Brief argues that Polar has "deliberately mischaracterize[d]" the claims and that the "frivolity" of this application is evidenced by the passage of time since the original attachment. <u>Id</u>. at 4. A more cogent explanation is, as shown in the Second Burgess Declaration (¶ 4), that nothing substantive has transpired in the Eitzen/Sigas v. Exmar

arbitrations over that period of "close to a year and a half" to produce a "ripe" indemnity claim by Exmar against Polar, as might have reasonably been expected in that period. Polar's over $1 million has simply been held "hostage."

## A. EXMAR'S CHARACTERIZATION OF ITS CLAIMS IN ITS COMPLAINT CANNOT DISGUISE THEIR NATURE AS INDEMNITY CLAIMS

Exmar's counsel follows the Lewis Carroll logic of "what I tell you three times is true." It claims that its solicitor's declaration, the Dench Declaration,[2] proves what the Complaint contradicts; namely that the MOA claims and Speed Claims are "breach of contract claims, <u>not</u> contingent indemnity claims" irrespective of the identical claims first being brought by Eitzen/Sigas against Exmar without result after over a "year and a half." It is significant that Exmar's Brief focuses on the Dench Declaration as follows:

> When correctly viewed through the prism of English law, EXMAR MOA claims are classic breach of contract claims. And while Eitzen/SIGAS may have brought similar claims against EXMAR pursuant to the Eitzen/SIGAS-EXMAR MOAs, those claims are subject to different arbitration proceedings and, crucially, "EXMAR could directly sustain its claim against POLAR in their arbitration proceeding, regardless of the outcome of the arbitration between EXMAR and Eitzen/SIGAS." (Dench Decl., ¶ 7).

Brief at 6.

First, the Eitzen/Sigas MOA claims are not "similar" but identical. The fact they arise under back-to-back MOAs (Burgess Dec. No. 2, ¶ 17) thereby giving rise to separate arbitration panels is dispositive of the indemnity nature of both the MOA Claims and Speed Claims under the Three Charters.

---

[2] Declaration of Exmar's London solicitor dated March 17, 2008.

The second, allegedly "crucial" point that Exmar "could" still claim against Polar "regardless" of whether Eitzen/Sigas is determined to have a valid claim against Exmar is unpersuasive.

Exmar's Amended Complaint dated November 9, 2006 as well as its Second Amended Complaint dated February 29, 2008 (collectively "Complaints") both allege in respect of both MOAs:

> 14. The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between EXMAR and Defendants POLAR SHIPPING.
>
> 15. As a result of Defendants POLAR SHIPPING's breach of the Memorandum of Agreement, Plaintiff EXMAR has suffered damages in the amount of $275,000, for which Defendants are liable to Plaintiff. [3]

The identical allegation is made in respect of the POLAR DISCOVERY MOA. Id. ¶¶ 22, 23; Second Amended Complaint, ¶¶ 24, 25 (again with an increased quantum). Neither of the MOA Claims as pleaded in either of the Complaints alleges a basis for Polar's liability other than based on the "deficiencies" which are alleged by Sigas to be a breach by Exmar of its MOA's. No "alternate" basis or theory of Polar's liability for the MOA Claims is alleged other than Exmar's own alleged breach and liability to Sigas under its own MOAs. Complaints, supra. The suggestion Exmar "could" think up a different ground for claiming against Polar even if Sigas' own claims are dismissed is speculative and certainly not found by "look[ing] only to the Complaint," as Exmar urges is only basis for review. Brief at 4.

---

[3] The Second Amended Complaint increases the quantum to $362,947.31.

4

Moreover, as stated by Polar's English law expert:

> Exmar only sought security for the amount which Eitzen claimed from Exmar, and not for any other alleged claims for losses that Exmar may have suffered independently of the claim for an indemnity for the Eitzen claims.
>
> 12. If Mr Dench was correct that Exmar's claims against Polar are 'stand alone' claims arising out of a breach of charter by Polar and that Exmar would be entitled to pursue its claims against Exmar now "regardless" of Eitzen/Sigas pursuing its claims against Exmar, Exmar would not have needed in its Complaint to have set out in great detail the contractual relationship between Eitzen and Exmar, and Exmar and Polar, and specified the claims brought by Eitzen against Exmar as the basis for the claims brought by Exmar against Polar.

Burgess Dec. No. 2, ¶¶ 11, 12.

The MOA Claims and Speed Claims are indemnity claims which are "not ripe under English law" so that the security obtained in respect of them should be vacated.

### POINT III

### EXMAR'S ARGUMENT THAT EVEN IF ITS MOA CLAIMS AND SPEED CLAIMS ARE INDEMNITY CLAIMS THEY GIVE RISE TO A RIGHT OF ATTACHMENT IS WRONG

Exmar roundly criticizes Polar for seeking to "mislead" the Court and Polar's English expert's declaration for "conspicuously" omitting a copy and discussion of the decision CAROLINE P. Brief at 10. That decision far from being omitted was quoted in Polar's opening brief at 11-12 as the rationale for Judge Kaplan's decision in Bottiglieri. Nevertheless, Polar claims that this "glaring omission concerning a dispositive point of

English law evinces the frivolity of POLAR's legal argument under English law." Brief at 10. It does protest too much.

The application of the indemnity principles stated by Judge Kaplan under CAROLINE P to the facts in Bottiglieri are no different here "from the allegations in the Complaint." 472 F. Supp.2d at 591. In this respect while the Dench Declaration quotes exactly the same paragraph from the CAROLINE P as quoted in Polar's opening brief it omits the following important passage:

> ... even if the indemnity is to be construed as an indemnity against the incurring of liability such an indemnity could not have been invoked by the owners until they had incurred some actual liability to the receivers.

Dench Dec. Ex. D, Telfair Shipping Corp. v. Inersee Carriers S.A. (The "CAROLINE P"), [1984] Lloyd's Rep. 466, 476 [Q.B. (Com. Ct.)]

Moreover, as both the Burgess Declarations make clear, irrespective of the "position in our case," as claimed by Mr. Dench (Id., p. 7, ¶ 16), or label that a plaintiff chooses to plead its cause of action, the English courts "construe a complaint based on its factual allegations ...". Burgess Dec. No. 1, ¶ 33. As pled and re-pleaded both MOA claims and the Speed Claims can only be construed as indemnity causes of action irrespective of those claims Mr. Dench now belatedly thinks (but does not reveal) Exmar might have been able to plead separately and apart from these claims made by Sigas against Exmar.

6

POINT IV

EXMAR'S PLEA FOR CONTINUING IMPROPER ATTACHMENTS BASED ON ALLEGED NECESSITY IS CONTRARY TO AQUA STOLI PRINCIPLES

Exmar claims that even if its freezing of Polar's money cannot be justified under applicable substantive law the attachments should remain. That improper request is based on the hearsay statement of Exmar's counsel that at the time he was told to commence suit his "initial instructions" were that the three vessels "were basically the only assets of the Defendants." Ross Aff. ¶ 2." That statement is transmogrified in the Brief to "the attached funds are the only existing assets of POLAR (Ross. Aff., ¶ 2)." Brief at 11. Only by such laxity with the rules of evidence can Exmar voice its "horrible imaginings" about the timing of the motion as a "strong-arm tactic" prior to a mediation by an "assetless company." Brief at 16. The allegations are entirely unsupported and improper.

Exmar likewise deliberately fails to acknowledge that the Second Circuit in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 444 (2d Cir. 2005) firmly put to rest the issue of necessity in granting (and impliedly denying) an attachment in stating that the "fact that Gardner Smith has substantial assets in another country is of no moment." The same principle clearly applies to improper attachments of allegedly assetless companies: if the attachment is improper as a matter of law it must be vacated irrespective of alleged necessity or "irreparable harm." Moreover, Aqua Stoli discussed the Court's equitable discretion to vacate attachments not to maintain them when, as Exmar acknowledges in citing Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,

7

478 F. Supp.2d 532, 543 (S.D.N.Y. 2007) a valid maritime claim giving rise to a right of attachment does not exist under applicable substantive law. Exmar's legal argument thus mixes the issue of "necessity" with a purported discretion to maintain an attachment where no such right exists, and adds in an entirely unsupported and inflammatory arguments of "irreparable harm" based on hearsay instructions in 2006 (Ross Aff. ¶ 2) to ignore Second Circuit teaching on the issue. Exmar's discretion argument as good as admits that its claims are indemnity claims and that it is using the attachments as settlement leverage as the years pass without any progress and Polar remains out of pocket by a very considerable sum.

## POINT V

### THE CLUB LOU DOES NOT MAKE IRRELEVANT THE IMPROPER BASIS FOR ATTACHMENT OF THE POLAR MONIES

Exmar makes no legal argument in its brief in opposition to the quotation from the Burgess Declaration No. 1 relating to English law governing Exmar's sub-charterer's deduction form hire in respect of its alleged cargo claim in respect of which Exmar attached $275,000. That sum was released based on posting of Rule E substitute security, the P&I Club letter of undertaking ("LOU"). Ross Aff. Ex. G.

Exmar's US and UK counsel argue that the LOU makes "not relevant" the motion's request to vacate the attachment represented by the LOU. Ross Aff. ¶ 9, Dench Dec. ¶¶ 8, 20-21. Exmar's opposition therefore fails to discuss any legal basis or provide any opposition to the Burgess Declarations stating that Exmar's "right of indemnity from

Polar could only accrue if and when Exmar's liability to the Polar Charterer has been determined …". Id. ¶ 47.

Moreover, the suggestion that provision of a P&I Club LOU somehow waives the Rule B or Rule C (arrest) defendant's right to challenge the propriety of the attachment or arrest complaint is spurious, as Exmar's counsel is fully aware. "Club LOUs" are frequently issued and relied upon as a means of avoiding arrest or attachment while preserving the Rule B or C defendants' defenses. See, 3 David E.R. Wolley, Benedict on Admiralty, § 61 at 7-10.4 (7th ed. 2006); In re Cia Naviera Marasia S.A., 466 F. Supp. 900, 902 (S.D.N.Y. 1979) ("It has been the practice for many years in the maritime industry to accept letters of undertaking ... to avoid the detention of vessels and the expense of posting security in other forms."); Nelson Marketing Int'l, Inc. v. Wilhelmsen Lines, 2000 AMC 1325, 1326 (C.D. Ca. 2000) ("... a letter of understanding [sic] ... precludes the need for the arrest of a vessel and avoids the concomitant costs and delay [collecting cases]").

The LOU at issue here was expressly "provided without prejudice as to any rights or defenses which the defendants may have, none of which is to be regarded as waived." Ross Aff. Ex. G, ¶ 4.[4] (emphasis added).

The indemnity nature of the claim is conceded and the LOU obtained under color of a proper libel should be ordered returned and cancelled.

---

[4] The fact that the Dench Declaration states the provision of the LOU makes arguments relating to the validity of the underlying cause of action by which it was obtained as Rule E substitute security "not relevant" goes to his credibility.

9

## POINT VI

### IF THE ATTACHMENT IS NOT VACATED THEN, IN THE ALTERNATIVE, POLAR IS ENTITLED TO COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E

In the event the attachment is not vacated then Polar, as Exmar concedes, is entitled to counter-security for its own counter-claims as asserted in its Answer and Counter-Claim, which arise by way of the same "transaction or occurrence," in the sum of $572,000.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the PMAG in respect of all three causes of action be vacated and the substitute security, the LOU, obtained under color of a properly filed admiralty claim be ordered returned and the case dismissed or, to the extent Exmar's attachment in respect of its "Speed Claims" and/or Charter Hire Deduction Claim is sustained, then Plaintiff be ordered, pursuant to Supplemental Rule E(7) to post a bond or other security satisfactory to the Court in the sum of $572,000 and for such other relief as is fair and equitable and as requested herein.

Date:   New York, New York
        April 7, 2008

Respectfully submitted,

BLANK ROME LLP

By: _____
    Jeremy J.O. Harwood
    405 Lexington Avenue
    New York, New York 10174
    (212) 885-5000
    *Attorneys for Defendants*
    *POLAR SHIPPING S.A., et al.*