BLANK ROME LLP
Attorneys for Defendants
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXMAR SHIPPING N.V.,<br><br>      Plaintiff,<br>  v.<br><br>POLAR SHIPPING S.A., et al.,<br><br>      Defendants. | 06 CIV 12991(HB) |

## NOTICE OF FOREIGN LAW PURSUANT TO F. R. CIV. P. RULE 44.1

  PLEASE TAKE NOTICE THAT, Defendants POLAR SHIPPING S.A., *et al.*, pursuant to F. R. Civ. P. Rule 44.1 intend to raise issue of foreign law, namely of English law, as set out in the attached declaration of Nicholas Burgess dated April 7, 2008.

Date: New York, New York
    April 7, 2008

                Respectfully submitted,

                BLANK ROME LLP

              By: /s/ Jeremy J.O. Harwood
                Jeremy J.O. Harwood
                405 Lexington Avenue
                New York, New York 10174
                (212) 885-5000
                *Attorneys for Defendants*

129071.00601/6611670v.1

BLANK ROME LLP
Attorneys for Defendants
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT
SOUTHERN DISTRICT OF NEW YORK

---

EXMAR SHIPPING N.V.,

        Plaintiff,

v.

POLAR SHIPPING S.A., et al.,

        Defendants.

06 CIV 12991(HB)

---

## REBUTTAL DECLARATION OF NICHOLAS BURGESS

## UNDER ENGLISH LAW

I, NICHOLAS BURGESS, declare under penalty of perjury:

1.    I am a member of the firm of English solicitors, Ince & Co., with offices at 1 St. Katherine's Way, London, England. I was admitted as a solicitor of the Supreme Court of England and Wales on January 4, 1997.

2.    I have read the Declaration of Stuart Dench dated 17 March 2008 ("Dench Dec." or "Dec.") and have been asked to provide this Rebuttal Declaration in response. I adopt definitions from my declaration dated February 15, 2008.

A.     **THE ARBITRATIONS UNDER THE POLAR/EXMAR MOAS**

3.     Leaving aside Mr Dench's personal comments on my declaration his Declaration is inaccurate in its attempt to circumvent the facts that (i) Exmar's claims are claims for indemnities in respect of losses Exmar may suffer to Eitzen/Sigas if Eitzen/Sigas ever pursue their claims against Exmar, and (ii) other than appointing arbitrators, very little substantive progress has been made in any of the Eitzen/Sigas vs. Exmar or Exmar vs. Polar arbitrations which effectively remain at a standstill, with a significant sum of Polar's money remaining frozen whilst Eitzen/Sigas decide whether or not to pursue any claims.

4.     Despite the comments in paragraph 4 of the Dench Declaration, the lack of appointment of third arbitrators in any of the references is indicative of the complete lack of progress since 2006. Whilst sometimes parties may agree in English arbitrations to ask the two appointed arbitrators not to appoint the third arbitrators, this is certainly <u>not</u> always the case as Mr. Dench suggests in paragraph 4 of the Declaration. In this case the parties have specifically discussed appointing third arbitrators in order to fully constitute the arbitration panels in case of disagreement between the two party appointed arbitrators in each arbitration reference and in order to have the same tribunal in each reference so that the arbitrations could be heard concurrently and/or consolidated in order to move these references forward. That has not happened, with the result that there are different tribunals in respect of each of the different references, with none of them being fully constituted such that the references remain in abeyance.

5.      I also maintain that recent settlement attempts have <u>not</u> delayed the arbitrations between Exmar and Polar, nor the arbitrations between Sigas and Exmar. Exmar filed its Complaint on November 9, 2006 as alleged. Dec. para. 5. No substantive settlement discussions took place from that date until late 2007/early 2008 when Polar, in light of the complete lack of progress in any of the arbitration references because it wanted to obtain the release of its attached funds, started pressing the other parties to seek to resolve these matters by way of a non-binding mediation which has now been arranged for April 22, 2008. Mr Dench seeks to suggest that it is because of this mediation that the parties (Eitzen/Sigas and Exmar) have not wished to incur legal costs in progressing the arbitrations, but that overlooks the fact that the failure to progress the arbitrations pre-dated the mediation and was the reason why the parties are seeking to mediate the disputes instead. The mediation has no bearing on the prematurity of Exmar's claims as a matter of law.

6.      Polar therefore maintains its argument that there has been significant delay in Exmar progressing its claims against Polar. This is, however, entirely due to the fact that Eitzen/Sigas has not progressed its claims against Exmar and, as Exmar's claims against Polar are indemnity claims (as set out below), Exmar has had no monetary claim to progress against Polar. Eitzen/Sigas's delay does not avail Exmar however; it simply evidences the indemnity nature of Exmar's claims against Polar.

**B.      THE HIRE DEDUCTION CLAIM FOR CARGO DAMAGE**

7.      The Dench Declaration claims that the provision of a P&I Club letter of undertaking ("LOU") means that "this claim is no longer secured by any of the currently

attached funds" so that my comment in my first declaration "[u]nless and until Exmar is found liable to the Polar Charterer for the cargo claim there is no ripe indemnity claim against Polar" (Id. para. 20) is "not relevant to these proceedings." Dec. para. 8. This is wrong. The sum of $275,000 attached in the New York Action, and the legal grounds for doing so, remains fully relevant and P&I Club letters of undertaking, which in my experience are standard and customary, do not waive any defences whether under English law or, as Polar's American counsel will separately brief, under American maritime law.

C. **THE SPEED CLAIMS**

8. After preparation of my original declaration of February 15, 2008, Exmar has sought to make some progress in two of the Exmar/Polar Charterparty arbitrations by service of claim submissions. Since that initial flurry of activity, despite the Dench Declaration stating that claim submissions would be forthcoming in respect of the vessel POLAR DISCOVERY, at the date of this declaration no such further submissions have been received. Dec. para. 9.

9. The Dench Declaration seeks to characterize Exmar's claims against Polar as being 'stand alone' claims for alleged breach of Charterparty by Polar, not contingent in any way upon the claims brought by Eitzen/Sigas against Exmar. It asserts that it is "quite conceivable that ... Exmar could sustain its claim against Polar regardless of the outcome of the arbitration between Exmar and Eitzen/SIGAS" Dec. para. 9 (emphasis added). The suggestion is, therefore, that even if Eitzen/SIGAS's claims fail against Exmar it can make the same claims against Polar. A brief perusal of Exmar's own

Complaint (meaning the November 9, 2006 complaint in respect of which the motion was filed) clearly shows that this is demonstrably wrong.

10.  Exmar's Complaint sets out in paragraphs 34 and 35 how the three vessels were chartered by Polar to Exmar, who entered into three back-to-back charter party contracts with Eitzen (the "Three Charters"). Paragraph 36 sets out that when the vessels were delivered by Polar to Exmar they were in turn delivered by Exmar to Eitzen. This explanation by Exmar in its Complaint of the contractual background sets up the paragraphs which follow in the Complaint that clearly show the contingent nature of the claims brought by Exmar against Polar:

> "37.  *Following performance by the vessels, Eitzen has presented claims to Exmar based on the alleged breach by Exmar of the "guaranteed speed" provisions of the Exmar-Eitzen charter parties.*
>
> 38.  *As a result of the alleged breach by Exmar, Eitzen has presented the following speed* claims *against Exmar... As a result, Eitzen's speed claims against Exmar total the amount of $373,850.00.*
>
> 39.  *The alleged failure of the vessels to reach the "guaranteed speed" constituted a breach of the time charter parties entered into between Plaintiff Exmar and Defendants Polar Shipping.*
>
> 40.  *As a result of their breach of the Polar Shipping-Exmar charter parties, Defendants Polar Shipping are liable to Plaintiff Exmar in the amount of US$373,850.00*" (emphasis added)

Complaint, paras. 37-40 (emphasis added).

11.  As is clear from Exmar's own Complaint, Exmar obtained the attachment not for its own claims for its own losses which Exmar may have suffered, but for a claim

for indemnity in respect of losses which it may suffer if Eitzen/Sigas pursued and succeeded in its principal claim for US$373,850.00 against Exmar. This is clearly a contingent indemnity claim. Exmar only sought security for the amount which Eitzen claimed from Exmar, and not for any other alleged claims for losses that Exmar may have suffered independently of the claim for an indemnity for the Eitzen claims.

12. If Mr Dench was correct that Exmar's claims against Polar are 'stand alone' claims arising out of a breach of charter by Polar and that Exmar would be entitled to pursue its claims against Exmar now "regardless" of Eitzen/Sigas pursuing its claims against Exmar, Exmar would not have needed in its Complaint to have set out in great detail the contractual relationship between Eitzen and Exmar, and Exmar and Polar, and specified the claims brought by Eitzen against Exmar as the basis for the claims brought by Exmar against Polar.

D. **ENGLISH LAW AS IT RELATES TO ACCRUAL OF A CAUSE OF ACTION FOR INDEMNITY**

13. In the light of the above, and the fact that Exmar's claims are plainly contingent indemnity claims and were expressed as such in its Complaint, I have nothing to add to my comments on English law as they relate to an accrual of a cause of action for indemnity. Mr Dench's comments are all premised on the assumption that Exmar's claims are not indemnity claims, which is clearly not correct.

E. **ENGLISH LAW ON CONSTRUCTION OF THE STATED CAUSE OF ACTION**

14. As I stated in my previous declaration, the English Commercial Court will construe a complaint based on its factual allegations not simply on how the plaintiff

chooses to label or plead its cause of action, i.e., breach of contract or for indemnity. It is clear from the facts set out in the Complaint in support of the attachment that Exmar's claims for which they have obtained security are based entirely upon claims brought by Eitzen/Sigas against Exmar for the MOA claims.

15.    Mr Dench now seeks to suggest in his Declaration that the claims brought by Eitzen/Sigas against Exmar "*only goes to one element of the measure of damages that Exmar suffered due to the breach of contracts by Polar*". Dec. para. 13. As is clear from the Complaint, however, and as set out above in relation to the Speed Claims and further below in relation to the MOA claims, the claims brought by Eitzen/Sigas against Exmar were the only measure of damages for which Exmar sought and obtained security in respect of the MOA Claims.

F.    **APPLICATION OF ENGLISH LAW TO THE INDEMNITY CLAIMS IN THE AMENDED COMPLAINT**

I.    **THE MOA CLAIMS**

16.    As with the Speed Claims discussed above, Exmar's Complaint set out in detail the contractual chain providing the basis upon which it sought to advance its claims against Polar, which makes clear the contingent indemnity nature of those claims.

17.    Exmar's Complaint sets out in paragraphs 7 - 9 how the POLAR BELGICA was sold by Polar to Exmar under an MOA, with Exmar entering into a back-to-back MOA with Eitzen the same day. This explanation by Exmar in its Complaint of the contractual background again sets up the paragraphs which follow in the Complaint which clearly show the contingent nature of the claims brought by Exmar against Polar:

> "13.   The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between Exmar and Sigas. As a result, Sigas/Eitzen deducted $275,000 from the Termination Fee Eitzen was required to pay Exmar.
>
> 14.   The conditions of class found by the Sigas surveyors constituted an alleged breach of the Memorandum of Agreement between Exmar and Defendants Polar Shipping.
>
> 15.   As a result of Defendants Polar Shipping's breach of the Memorandum of Agreement, Plaintiff Exmar has suffered damages in the amount of $275,000, for which Defendants are liable to Plaintiff."

18.   The Complaint sets out the claims in respect of the POLAR DISCOVERY in the same way.

19.   As is again clear from Exmar's own Complaint, Exmar obtained the attachment not for its own claims for its own losses which Exmar may have suffered, but for a claim for <u>indemnity</u> in respect of losses which it would suffer <u>if</u> Eitzen/Sigas was entitled to deduct US$275,000 from the money it owed Exmar. This is again clearly a contingent indemnity claim. Exmar only sought security for the amount which Eitzen claimed from Exmar, and not for any other alleged claims for losses which Exmar may have suffered independently of the claim for an indemnity for the Eitzen claims.

20.   Again, if the Dench Declaration was correct that Exmar's claims against Polar are 'stand alone' claims arising out of a breach of the MOAs by Polar and that Exmar would be entitled to pursue its claims against Exmar now "regardless" of Eitzen/Sigas pursuing its claims against Exmar, Exmar would not have needed in its Complaint to have set out in great detail the contractual relationship between Eitzen and

Exmar, and Exmar and Polar, and specified the claims brought by Eitzen against Exmar as the basis for the claims brought by Exmar against Polar.

## II. THE SPEED CLAIMS

21. As stated above, Exmar has not incurred any actual liability to Eitzen in respect of its speed claims under its contracts with Eitzen, i.e., the Three Charters, and unless and until Eitzen prevails on its claims against Exmar Polar has only a contingent indemnity liability to Exmar.

### G. ENGLISH LAW GOVERNING CHARTERER'S DEDUCTION FROM HIRE FOR CARGO CLAIMS

22. The Dench Declaration's legal discussion asserts, as stated above, that the LOU renders my first declaration's discussion of the English law governing this claim "not relevant." Dec. para. 20. In doing so the Dench Declaration concedes the correctness of my statement of law. Id., paras. 39-42. It is unassailable that Exmar's sub-charterer had no legal right to use its cargo claim as a set-off against sub-charter hire. Equally, Exmar has no legal right under English law to use that improper action as a basis for the attachment: "Two wrongs do not make a right." I defer to American counsel on the effect of the LOU on the procedural issues.

23. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: April 7, 2008
at London, England

_____
NICHOLAS BURGESS